**UNITED STATES of America,
Plaintiff,**

v.

**Steven J. HALMO et al.,
Defendants.**

**No. 74–Cr–101.**

United States District Court,
E. D. Wisconsin.

Dec. 12, 1974.

William J. Mulligan U. S. Atty., by D. Jeffrey Hirschberg, Milwaukee, Wis., Gregory H. Ward, Chicago, Ill., for plaintiff.

Charles Hausmann, Milwaukee, Wis., for Palmisano.

Theodore F. Mazza, New Berlin, Wis., for Marino.

Russell Greb, Waukesha, Wis., for Gukich.

Richard E. Reilly, Milwaukee, Wis., for Halmo.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendants Halmo, Palmisano and Marino, pursuant to Rule 41, Federal Rules of Criminal Procedure, have filed a series of related motions to suppress evidence resulting from the interception of wire and oral communications, pen registers and searches of persons and premises. Mr. Palmisano and Mr. Gukich have moved to dismiss the indictment. Finally, Mr. Gukich, pursuant to Rule 14, Federal Rules of Criminal Procedure, has moved for a separate trial. I conclude that each of the motions should be denied.

The defendants Halmo, Palmisano and Marino challenge the validity of the following orders for the interception of wire and oral communications: (1) The order entered by Circuit Judge Thomas E. Fairchild on November 24, 1973, based on Miscellaneous Application #6; (2) the order entered by Judge John W. Reynolds on December 27, 1973, based on Miscellaneous Application #9; and (3) the order entered by Judge Reynolds on December 30, 1973, based on Miscellaneous Application #11.

I will first resolve the issues raised by the defendants' assertion that the justice department's authorizations to obtain those wiretap orders were improper under 18 U.S.C. § 2516. Each of the wiretap orders is asserted to be invalid on other grounds as well, but I will consider those contentions later in this ruling.

Section 2516 requires that authorizations for wiretap orders come from the attorney general or any assistant attorney general "specially designated" by the attorney general. In my opinion, each of the disputed authorizations is valid. However, before indicating what issues are raised with respect to the asserted failure to comply with § 2516, it will be useful to set forth the pertinent facts.

Solicitor general Robert Bork became the acting attorney general of the United States on October 20, 1973, under the provision of 28 U.S.C. § 508. On October 23, 1973, Mr. Bork issued Orders numbered 548–73 and 549–73, specially designating the assistant attorneys general in charge of the criminal (Henry Petersen) and tax (Scott P. Crampton) divisions of the justice department to authorize applications for the interception of wire and oral communications.

Mr. Petersen used the power delegated to him to authorize the wiretap applications in Miscellaneous Application #6 on November 21, 1973, and in Miscellaneous Application #9 on December 21, 1973. On December 28, 1973, Mr. Crampton authorized the wiretap application in Miscellaneous Application #11. In each instance the authorizations occurred more than 30 days after acting attorney general Bork took office. Furthermore, the last two authorizations were issued subsequent to William Saxbe's confirmation as attorney general on December 19, 1973.

The defendants' first claim that an "acting" attorney general lacks the power of the attorney general under § 2516 to designate an assistant attorney general.

■ In United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court extensively analyzed the congressional purposes behind the requirement of § 2516 to be construed in this case. *Giordano* summarized that legislative policy as follows:

> "We have already determined that Congress intended . . . to condition the use of intercept procedures upon the judgment of *a senior official* in the Department of Justice . . . ." 416 U.S. 527, 94 S.Ct. 1832 (emphasis added).

Based on this policy, the special designation of an acting attorney general meets the requirements of § 2516.

■ The defendants next contend that solicitor general Bork took the office of acting attorney general pursuant to 5 U.S.C. § 3345, and that therefore his tenure was terminated after 30 days. 5 U.S.C. § 3348. I conclude that the 30 day limitation imposed by § 3348 was inapplicable.

Mr. Bork assumed office not as a "first assistant" under the provisions of 5 U.S.C. § 3345 and 28 U.S.C. § 508 (a), but rather as solicitor general, Mr. Bork became the acting attorney general pursuant to 28 U.S.C. § 508(b)

and 28 C.F.R. § 0.132(a). There is no time limitation imposed on those who acquire office through § 508(b).

■ As a final argument, the defendants urge that when acting attorney general Bork's authority ended, the authority of his special designees ended as well. Even assuming that Mr. Bork's authority ended after 30 days and recognizing that it terminated when Mr. Saxbe took office, it is my opinion that the authority of Messrs. Petersen and Crampton remains valid until revoked by the attorney general.

A similar contention under analogous circumstances with respect to termination of authority to act was made and rejected in United States v. Morton Salt Co., 216 F.Supp. 250 (D.Minn. 1962), aff'd, 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1965). The following quotation from page 256 of the district court's opinion in that case provides cogent reasons to uphold the validity of each of the authorizations of assistant attorneys general Petersen and Crampton in this case:

> "This contention is clearly untenable in that it is the authority from the duly designated official in the office of the Attorney General which the statute requires, and if that individual thereafter resigns, dies, or is otherwise separated from his office, the authority to act under the authorization is not terminated. In other words, when a designated official acts within the scope of his authority, the authorization must continue until it is revoked or is otherwise terminated. If this were not true, a change of administration or resignation from office by the official who acted within his authority when the designation was made would create a chaotic condition in the administration of the affairs of the Department of Justice."

I next turn to the question whether the affidavit of agent James P. Graham, supporting the wiretap order of Judge Fairchild on November 24, 1973, states sufficient facts as to the utilization of

other investigative techniques in compliance with 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c). I conclude that the statements made at pages 22–24 of Mr. Graham's affidavit were adequate. See United States v. Askins, 351 F.Supp. 408, 414 (D.Md.1972); United States v. Whitaker, 343 F.Supp. 358, 362–363 (E.D.Pa.1972), rev'd on other grounds, 474 F.2d 1246 (3d Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006 (1973).

Another ground advanced by the defendants in support of their motion to suppress evidence derived from the November 24, 1973, wiretap order is that probable cause is lacking with respect to a violation of 18 U.S.C. § 1955. The defendants further urge that the confidential sources were not worthy of belief.

The lack of probable cause is the only ground raised by the defendants to support their motion to suppress evidence derived from the pen register order of November 24, 1973. Since the Graham affidavit was also used to support entry of the pen register order, it follows that my conclusion that probable cause existed for the entry of the wiretap order warrants the denial of the motion to suppress evidence derived from the pen register.

■ After examining the Graham affidavit, I conclude that the defendants' attack on the information obtained from the unnamed informers is without merit. The information provided by Mr. Graham regarding the past reliability of each of such sources in addition to the fact that these unnamed sources either personally observed the activity reported or conversed with persons who admitted involvement in the suspected gambling operation, convinces me that Judge Fairchild was entitled to believe that the information supplied was truthful. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. DeCesaro, 502 F.2d 604 (7th Cir., decided August 15, 1974).

■ Insofar as the issue whether the Graham affidavit shows probable cause to believe that 18 U.S.C. § 1955 was being violated, two questions arise:

First, was the involvement of five persons in a gambling business adequately demonstrated? In my opinion, United States v. DeCesaro, *supra*, plainly indicates that the answer should be affirmative.

Second, was there probable cause to believe that the gambling business operated on two or more successive days pursuant to 18 U.S.C. § 1955(c)? The Graham affidavit evidences a continuing series of transactions over a period of several months. Many of the observations of the subjects showed the existence of daily gambling activity. I thus conclude that there was probable cause to believe the gambling business was carried on for two or more successive days.

Finally, the defendant Halmo contends that no probable cause existed to tap telephone numbers (414) 645–1983 and (414) 645–0118. Pages 15 and 17a of the Graham affidavit, when read in the context of the rest of the affidavit, adequately support the wiretap and pen register order of November 24, 1973, for those telephone numbers.

In view of the foregoing, I conclude that the motions to suppress evidence derived from the November 24, 1973, orders authorizing the interception of wire and oral communications and the installation of pen registers should be denied.

The defendants also seek to suppress evidence obtained from the December 30, 1973, orders of Judge Reynolds (based on Miscellaneous Application #11) authorizing the interception of wire and oral communications and the installation of pen registers.

I have already disposed of the defendants' argument that the justice department authorizations to seek the wiretap orders was insufficient. I have also indicated that there is no persuasiveness

to the contention that the affidavit in support of the December 30, 1973, orders was tainted with unlawfully obtained information.

The defendants' attack upon the sufficiency of the affidavit's statement of other investigative procedures required by 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c) must also fail. Pages 20, 20a and 21 of the affidavit of special agent John H. Schulte meet the necessary standards. See United States v. Askins, 351 F.Supp. 408, 414 (D.Md.1972); United States v. Whitaker, 343 F.Supp. 358, 362–363 (E.D.Pa.1972), rev'd on other grounds, 474 F.2d 1246 (3d Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006 (1973).

The defendants contend that there is no probable cause to believe that 18 U.S.C. § 1955 was being violated. From the Schulte affidavit, I conclude that the wiretap and pen register orders of December 30, 1973, were validly entered.

The defendant Marino has moved to suppress evidence derived from the order entered by Judge Reynolds on December 27, 1973, for the interception of wire and oral communications. I have already disposed of the only ground upon which he challenges that order, and accordingly this motion to suppress will not be granted.

Mr. Palmisano seeks to suppress evidence derived from the following: (1) the search of the premises located at 5353 North Kent Avenue, Whitefish Bay, Wisconsin; (2) the search of Richie's Tavern, 346 North Broadway, Milwaukee, Wisconsin; and (3) the search of the person of August Palmisano. The motion to suppress with respect to the search of Mr. Palmisano's person should be denied. However, because of the government's representations concerning searches (1) and (2), the denial of the defendant's suppression motion regarding those searches will be without prejudice.

The government states that no search of the premises at 5353 North Kent was conducted and that, in any event, it intends to offer no evidence derived from the alleged search. Thus, although the defendant's motion as to such search must be denied at this time, counsel for Mr. Palmisano may renew his objection should the government later deviate from its representation.

Mr. Palmisano claims that the search of Richie's Tavern was unlawful because: (1) the search warrant was based on evidence unlawfully secured; (2) there was insufficient probable cause to support the issuance of the warrant; (3) the property seized was not that described in the search warrant; and (4) the items seized were in an area not authorized on the face of the warrant.

I reject the defendant's first two contentions. I have already determined the propriety of the wiretap orders, the fruits of which constitute the bulk of the information contained in Mr. Hunt's supporting affidavit. Furthermore, I have inspected Mr. Hunt's affidavit and find it adequate to support the probable cause determination by the magistrate.

Insofar as the defendant's third and fourth objection to the search are concerned, the government's brief in opposition to the defendant's suppression motions states at page 9:

"The government intends to offer into evidence only those items seized which were specifically listed or which were 'gambling paraphernalia' as covered by the warrants. Also, only evidence seized from the front and back rooms of Richie's Tavern will be introduced."

Based on this representation, I will deny the suppression motion at issue, but the defendant Palmisano may renew his objection on the third and fourth grounds described above if the government offers evidence contrary to its above representation.

The motion to suppress evidence seized from the person of Mr. Palmisano should be denied. The search warrant was not based on evidence unlawfully

secured. The affidavit of Mr. Hunt demonstrates the requisite probable cause for the search of Mr. Palmisano. The inventory of items seized contains nothing which was not properly authorized on the face of the search warrant.

Mr. Halmo has moved to suppress evidence obtained from the search of his residence at 716 South Seventh Street, Milwaukee, Wisconsin, and from the search of his person. The warrants authorizing these two searches were based on the same affidavit of Mr. Hunt which supported the various searches to which the defendant Palmisano objected. Accordingly, Mr. Halmo's claim that the warrant was based on information illegally obtained has already been resolved.

Furthermore, the government representation, quoted earlier, that any evidence seized not described in the warrants will not be introduced at the trial, warrants denial at this time of Mr. Halmo's two suppression motions. Mr. Halmo, like Mr. Palmisano, will be free to renew this objection should the government deviate from its representation.

█ I turn now to consider the merits of the motion to dismiss the indictment filed by the defendant Palmisano and joined by the defendant Gukich. This motion should be denied. The thrust of this motion is that the indictment fails to state which of the seven subsections of Wis.Stat. § 945.03 (1971) the defendants' alleged gambling business violates. In my opinion more specificity is not required to enable the defendants successfully to plead the bar of double jeopardy and to inform them of what they will have to meet to formulate a defense. Cf. United States v. Garrison, 348 F.Supp. 1112, 1121–1122 (E.D.La.1972).

Finally, the defendant Gukich has moved for a separate trial on the grounds that his joinder as a defendant is prejudicial. The defendant has suggested that the potential for prejudice exists, but he has not presented any specific facts which would justify a severance.

Therefore, it is ordered that the motions to suppress evidence derived from the orders dated November 24, 1973, December 27, 1973, and December 30, 1973, authorizing the interception of wire and oral communications and the installation of pen registers be and hereby are denied.

It is also ordered that the motions of the defendant Halmo to suppress evidence seized from his person and at his residence located at 716 South Seventh Street, Milwaukee, Wisconsin, be and hereby are denied, without prejudice.

It is further ordered that the motion of the defendant Palmisano to suppress evidence seized from his person be and hereby is denied.

It is further ordered that the motion of the defendant Palmisano to suppress evidence seized from 5353 North Kent Avenue, Whitefish Bay, Wisconsin, and to suppress evidence seized at Richie's Tavern, 346 North Broadway, Milwaukee, Wisconsin, be and hereby are denied, without prejudice.

It is further ordered that the motion of the defendants Palmisano and Gukich to dismiss the indictment be and hereby is denied.

It is further ordered that the motion of the defendant Gukich for a separate trial be and hereby is denied.