March 16, 1978

## 78-18 MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

### Vacancy Act (5 U.S.C. §§ 3345-3349)—Law Enforcement Assistance Administration

We are herewith responding to your request for our analysis and comment on the opinion of the Deputy Comptroller General to Representative Holtzman of February 27, 1978, concerning the service of Mr. James H. Gregg as Acting Administrator of the Law Enforcement Assistance Administration (LEAA) for a period in excess of 30 days following the resignation of its Administrator on February 25, 1977. The opinion concludes, on the basis of the so-called Vacancy Act, 5 U.S.C. §§ 3345-3349, that the service of Mr. Gregg as Acting Administrator could not extend beyond 30 days, and that after that date "there was no legal authority for anyone to perform the duties of the Administrator except the Attorney General himself, in whom by statute, all the Administrator's functions are vested."

I.

The sole authority cited by the opinion is the earlier opinion of the Comptroller General involving the service of L. Patrick Gray as Acting Director of the Federal Bureau of Investigation in 1973, with which opinion this Department disagreed.

In a letter to Senator Hruska, dated March 13, 1973, then Assistant Attorney General Robert G. Dixon (OLC) responded to the Senator's request concerning the Comptroller General's opinion. Mr. Dixon took the position that the Vacancy Act, in particular the 30-day provision of 5 U.S.C. § 3348, did not apply to every vacancy in the executive branch, including some of the offices which textually might appear to be covered by the Act. To the contrary, Mr. Dixon opined that specific or later statutes dealing with the manner in which an officer may perform the duties of a vacant office prevailed over the Vacancy Act. As stated in our memorandum to you of February 27, we adhere to that view and note that this interpretation of the Act has been upheld by the courts in

*United States* v. *Lucido*, 373 F. Supp. 1142, 1148 (E.D. Mich. 1974) and
*United States* v. *Halmo*, 386 F. Supp. 593, 595 (E.D. Wis. 1974).[1]

Mr. Gregg does not exercise the powers of the Administrator, pursuant to 5
U.S.C. §§ 3345, 3346, or 3347; hence, the 30-day provision of 5 U.S.C. § 3348
is not directly applicable. The opinion of the Court of Appeals in *Williams* v.
*Phillips*, 482 F. (2d) 669 (D.C. Cir. 1973) referred to in our original
memorandum of February 27, 1978, indicates that in this situation Mr. Gregg
could act pursuant to the delegation of authority only for a reasonable period of
time and suggests that 5 U.S.C. § 3348 would constitute a guideline for what
constitutes a reasonable period in the absence of a nomination. It is clear that
the court intended to foreclose other tests of reasonableness, or to indicate that
it would not take into account the special problems created by an impending
reorganization of the agency involved. Incidents of this type have occurred in
the past. Thus, the then-Secretary of Commerce resigned on February 1, 1967.
At that time President Johnson planned to combine the Departments of
Commerce and Labor, and did not fill the vacancy in the Department of
Commerce until June 1967, when it became apparent that Congress would not
accede to the consolidation of the two Departments.

## II.

The consequences drawn by the Deputy Comptroller General from his
conclusion that Mr. Gregg lacks authority to perform the duties of the
Administrator are on even less solid ground. He takes the position that only the
Attorney General can now act for LEAA and that he indeed should ratify past
actions taken by Mr. Gregg since they are subject to challenge. Those
conclusions ignore the statutory limitations on the power of the Attorney
General with respect to the LEAA and the *de facto* officer rule.

*First:* The basic organic provision of LEAA is 42 U.S.C. § 3711(a), as
amended by § 102 of the Crime Control Act of 1976 (Pub. L. No. 94-503; 90
Stat. 2407); it provides:

> (a) There is hereby established within the Department of Justice,
> *under the general authority, policy direction, and general control of*
> *the Attorney General,* a Law Enforcement Assistance Administration
> (hereafter referred to in this chapter as "Administration") composed
> of an Administrator of Law Enforcement Assistance and two Deputy
> Administrators of Law Enforcement Assistance, who shall be appointed
> by the President, by and with the advice and consent of the Senate.
> [Emphasis added.][2]

---

[1]Moreover, the Deputy Comptroller General's present reliance on his *ipse dixit* in the *Gray* case
is misplaced since that situation involved a designation of an Acting Director of the FBI under 28
U.S.C. §§ 509, 510. The present situation does not involve a designation of an acting head of an
executive agency but rather it concerns a delegation of authority under 42 U.S.C. § 3752, a
different matter from a legal standpoint. The legal effect of the delegation was considered in our
February 27 memorandum.

[2]We note that the quotation of this subsection in the Deputy Comptroller General's opinion is
erroneous; it fails to take into account its amendment by the Crime Control Act of 1976.

The functions of LEAA thus are not completely vested in the Attorney General, as are those of most of the components of the Department of Justice. *See* 28 U.S.C. § 509. The Attorney General is given "general authority, policy direction, and general control." As shown by the legislative history of the 1976 amendment, its purpose was to give LEAA a considerable amount of internal autonomy, especially with respect to specific grants.

The Senate report (S. Rept. No. 94-847, 94th Cong., 2d sess. (1976), p. 15), states:

> . . . the responsibility for its [LEAA's] day-to-day operational control rests with the Administrator.

And again:

> The new language is added to make clear the concept that, as a component of the Department of Justice, the Administration falls within the overall authority, policy direction, and control of the Attorney General, while the responsibility for its day-to-day operational control rests with the Administrator. [p. 35]

The pertinent House report, H.R. Rept. No. 94-1155, 94th Cong., 2d sess. (1976), p. 30, contains the following statement of then-Deputy Attorney General Tyler:

> H.R. 9236 embodies several clarifications and refinements that we believe would improve the efficacy of the LEAA program. First of all, H.R. 9236 proposes that the Act be clarified by expressly stating that LEAA is under the policy direction of the Attorney General. The Act now provides that LEAA is within the Department of Justice, under the "general authority" of the Attorney General. In accordance with this language, the Attorney General is deemed ultimately responsible for LEAA. To make this responsibility meaningful, the Attorney General must concern himself with policy direction. *Under the proposed language change, responsibility for the day-to-day operations of LEAA and particular decisions on specific grants will remain with the Administrator, as they are now.* The proposed additional language will make clear what is now assumed to be the case. [Emphasis added.]

Senator Hruska explained on the floor of the Senate that the purpose of the limitation on the Attorney General's power was

> . . . to assure that the Senate and local nature of the program would not be overshadowed by the Department of Justice programs. [122 Cong. Rec. S. 23332 (Daily Ed., July 22, 1976)]

The authority reserved to the Administrator or Deputy Administrators and delegated to Mr. Gregg consists, apart from personnel actions, mainly of

approving important, complex, and controversial grants.[3] Because of the statutory limitation on the Attorney General's authority with respect to LEAA, those grant functions could not be performed by anyone pending Presidential nomination and Senate confirmation of a new Administrator, LEAA, if Mr. Gregg—as asserted by the Comptroller General—is incapable of performing the functions delegated to him. This would be an extreme result; but it is the logical conclusion of the Deputy Comptroller General's reading of the Vacancy Act.

*Second*: The Deputy Comptroller General's assumption that Mr. Gregg's past and present actions in carrying out the functions of the Administrator are subject to challenge because his tenure violates the Vacancy Act ignores the *de facto* officer principle. That principle holds that where an officer performs the duty of an office under color of title, he is considered a *de facto* officer, and his acts are binding on the public, and third persons may rely on their legality. *McDowell* v. *United States*, 159 U.S. 596, 601-602 (1895); *United States* v. *Royer*, 268 U.S. 394 (1925); *United States ex rel. Dorr* v. *Lindsley*, 148 F. (2d) 22 (7th Cir. 1945), cert. denied, 325 U.S. 858. Indeed, the authority of *de facto* officers can be challenged as a rule only in special proceedings in the nature of *quo warranto* brought directly for that purpose. *United States ex rel. Dorr* v. *Lindsley, supra; United States* v. *Nussbaum*, 306 F. Supp. 66, 68-69 (N.D. Cal. 1969); Mechem, *Public Office and Officers*, §§ 343, 344 (1890).

The reason for the principle is that there should be no cloud on the validity of public acts and the right of the public to rely on them in the case of technical imperfections or doubts. A typical case of a *de facto* officer is an officer who continues to serve after his term of office has expired. *Waite* v. *Santa Cruz*, 184 U.S. 302, 322-324 (1902); *United States* v. *Groupp*, 333 F. Supp. 242, 245-246 (D. Maine 1971), *aff'd*, 459 F. (2d) 178, 182, fn. 12 (1st Cir. 1972). The Deputy Comptroller General concedes that Mr. Gregg validly exercised the functions of the Administrator for at least 30 days. It is our conclusion, therefore, that under the *de facto* officer principle, Mr. Gregg's actions will continue to bind third parties until his right to perform the delegated functions

---

[3]A. Authority reserved for Administrator or Deputy Administrators.
  1. Sign Track II discretionary grants, *i.e.*, grants involving States in one region of the country, if:
     a. Cost is $300,000 or more;
     b. Project is of a controversial nature;
     c. Project is a construction project;
     d. Approach has not been tested or demonstrated elsewhere.
  2. Sign Track I discretionary grants, *i.e.*, involve more than one region or have national impact.
  3. Sign Public Safety Officers' Benefits Act awards. Also make final agency decision on PSOB claims.
  4. Approve personnel actions for GS-14 and GS-15.
  5. Make final agency decision on compliance and adjudicatory hearings including civil rights.

has been adversely determined in proceedings specifically brought for that purpose.[4]

For the reasons stated above, we disagree with the legal positions taken by the Deputy Comptroller General in his opinion. Nevertheless, we believe the only satisfactory resolution of the uncertain status of Mr. Gregg's authority is for the President to submit a nomination to fill the position of Administrator even though the position may well be abolished with the proposed reorganization of LEAA.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[4]We may add that the *de facto* officer rule is not an antiquated doctrine, but has been applied frequently in connection with technical violations in the composition of draft boards. See *Groupp, supra*.