(Slip Opinion)

# Designating an Acting Director of National Intelligence

In designating an Acting Director of National Intelligence, the President could choose anyone who is eligible under the Federal Vacancies Reform Act of 1998, even though 50 U.S.C. § 3026(a)(6) specifies that the Principal Deputy DNI "shall act for" the DNI during a vacancy.

The President could designate the Senate-confirmed Director of the National Counterterrorism Center as the Acting DNI, but that person could not perform the duties of the NCTC Director during his time as the Acting DNI because no person may "simultaneously serve" as NCTC Director and "in any other capacity in the executive branch," 50 U.S.C. § 3056(b)(2).

Because the incumbent NCTC Director was rendered unable to perform the duties of that office while serving as Acting DNI, the NCTC Director's first assistant would, in the absence of an alternative presidential designation, automatically serve as Acting NCTC Director under the Vacancies Reform Act.

November 15, 2019

MEMORANDUM FOR THE LEGAL ADVISOR
TO THE NATIONAL SECURITY COUNCIL

On July 28, 2019, Daniel R. Coats submitted his resignation as the Director of National Intelligence ("DNI"), effective August 15, 2019. On August 8, 2019, Susan M. Gordon, the Principal Deputy DNI, announced that she would resign at the same time as the DNI. In connection with these impending vacancies, you asked whether the President could invoke the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345–3349d, to authorize Joseph Maguire, the Director of the National Counterterrorism Center ("NCTC Director"), to serve as Acting DNI and whether someone else might then serve as Acting NCTC Director. We advised that the President could designate the NCTC Director as the Acting DNI, but because no person may "simultaneously serve" as NCTC Director and "in any other capacity in the executive branch," 50 U.S.C. § 3056(b)(2), Mr. Maguire could not perform the duties of the NCTC Director during his time as the Acting DNI. We further advised that, because Mr. Maguire would be legally disabled from serving as NCTC Director during that period, the Vacancies Reform Act would authorize someone else to serve as Acting NCTC Director.

This memorandum memorializes the reasoning underlying our advice. In reaching our conclusions, we considered the interaction between the

Vacancies Reform Act and the provisions of the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3003 *et seq.*, that establish the offices of the DNI and the NCTC Director. *First*, consistent with our prior opinions, we concluded that the Vacancies Reform Act would remain an available means for designating an Acting DNI, even though IRTPA specifies that the Principal Deputy DNI "shall act for" the DNI during a vacancy, *id.* § 3026(a)(6). *Second*, upon the Principal Deputy DNI's resignation, no officer would automatically become the Acting DNI under either IRTPA or the Vacancies Reform Act, and that would remain true even if someone else became the Acting Principal Deputy DNI, because the statutes do not allow a "double acting" arrangement. *Third*, the first person named in the operative order of succession, established by a 2013 presidential memorandum, could not serve as Acting DNI because she was on detail to the Office of the Director of National Intelligence ("ODNI") and was not otherwise eligible under 5 U.S.C. § 3345(a)(3). *Fourth*, the second person on the order of succession, the NCTC Director, was available to serve as Acting DNI, but, as contemplated in IRTPA and the 2013 presidential memorandum, could not perform the duties of the NCTC Director while serving as Acting DNI. *Finally*, because an incumbent NCTC Director is, by statute, rendered unable to perform the duties of that office while serving as Acting DNI, this was an unusual instance in which someone else could act in an already-encumbered position—here, become the Acting NCTC Director—while the incumbent served elsewhere in an acting capacity.

## I.

In 2004, Congress enacted IRTPA, which established the position of the DNI to serve as the "head of the intelligence community" and "principal adviser to the President" and others on "intelligence matters related to . . . national security." 50 U.S.C. § 3023(a), (b) (codifying Pub. L. No. 108-458, sec. 1011(a), § 102(a), (b), 118 Stat. 3638, 3644). The DNI is appointed by the President with the advice and consent of the Senate. 50 U.S.C. § 3023(a)(1).

IRTPA also established the ODNI to assist the DNI in carrying out his duties. *Id.* § 3025(a), (b). Congress created several offices within the ODNI and authorized the DNI to establish additional offices and to hire staff members. *Id.* § 3025(c), (d). In practice, many of those on the

ODNI's staff are detailed from other agencies in the intelligence community. *See id.* § 3024(*l*)(1)–(2) (authorizing the DNI to prescribe mechanisms to encourage such details); ODNI, Who We Are, www.dni.gov/index.php/who-we-are/organizations (last visited Nov. 15, 2019) (noting that "[t]he ODNI is staffed by officers from across the [intelligence community]").

One of the ODNI's statutory officers is the Principal Deputy DNI, 50 U.S.C. § 3025(c)(2), who is appointed by the President with the advice and consent of the Senate, *id.* § 3026(a)(1). The Principal Deputy DNI "assist[s] the [DNI] in carrying out the duties and responsibilities of the [DNI]." *Id.* § 3026(a)(5). The statute further provides that the Principal Deputy DNI "shall act for, and exercise the powers of, the [DNI] . . . during a vacancy in the position of [DNI]." *Id.* § 3026(a)(6).

Another of the ODNI's statutory officers is the NCTC Director, *id.* § 3025(c)(11), who is also appointed by the President with the advice and consent of the Senate, *id.* § 3056(b)(1). The NCTC Director serves as the "principal adviser" to the DNI on "intelligence operations relating to counterterrorism" and has "primary responsibility within the United States Government for conducting net assessments of terrorist threats." *Id.* § 3056(f)(1). The NCTC Director "may not simultaneously serve in any other capacity in the executive branch." *Id.* § 3056(b)(2).

## II.

We first explain who was eligible to serve as Acting DNI upon the resignations of both the DNI and the Principal Deputy DNI on August 15, 2019. We advised not only that the President could designate the NCTC Director as the Acting DNI, but also that he would become the Acting DNI by operation of the current order of succession, which was issued in 2013 as an advance exercise of the President's authority under the Vacancies Reform Act.

## A.

Throughout the Executive Branch, the Vacancies Reform Act generally applies when a Senate-confirmed officer, such as the DNI or NCTC Director, "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). By default, anyone serving

as "the first assistant" to the vacant office "shall" become the acting officer. *Id.* § 3345(a)(1). But the President "may" instead choose to designate, as the acting officer, someone who already holds an "office for which appointment is required to be made by the President, by and with the advice and consent of the Senate," *id.* § 3345(a)(2), or an "officer or employee" of the same agency who has served in a position with a sufficiently high level of compensation "for not less than 90 days" of the "365-day period preceding" the vacancy, *id.* § 3345(a)(3).

IRTPA states that the Principal Deputy DNI "shall act for" and "exercise the powers of" the DNI "during a vacancy in the position of" the DNI, 50 U.S.C. § 3026(a)(6), but IRTPA does not otherwise make the Vacancies Reform Act inapplicable to the position of DNI. In a series of opinions dating back to 2003, this Office has consistently explained that the Vacancies Reform Act remains available to the President as a means for designating an acting official even when an office-specific statute provides that someone else "shall" serve in that role. *See Designating an Acting Director of the Federal Housing Finance Agency*, 43 Op. O.L.C. __, at *4–10 (Mar. 18, 2019) ("*Acting Director of FHFA*"); *Designating an Acting Attorney General*, 42 Op. O.L.C. __, at *3–8 (Nov. 14, 2018); *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. __, at *4–11 (Nov. 25, 2017); *Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208, 208–11 (2007); *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121, 121 & n.1 (2003). When another statute does so, we have explained, the Vacancies Reform Act ceases to provide the *exclusive* means of filling vacancies on an acting basis, but, without something more to displace the Vacancies Reform Act, it remains an available alternative to the other statute. *See Acting Director of FHFA*, 43 Op. O.L.C. __, at *4–6. Every court to address this question has agreed with our reasoning.[1] And we think that the same conclusion applies to the

---

[1] *See United States v. Castillo*, 772 F. App'x 11, 13 (3d Cir. 2019) (noting that district "courts have been asked to address the validity of [Matthew Whitaker's] designation [as the Acting Attorney General] and have, thus far, uniformly concluded that it was proper"); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (addressing designation of Acting General Counsel of the NLRB; "neither the [Vacancies Reform Act] nor the [National Labor Relations Act] is the *exclusive* means of appointing an Acting General Counsel"; "the President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel"); *United States v. Patara*,

DNI. Notwithstanding section 3026(a)(6)'s provision that the Principal Deputy DNI "shall act for" the DNI during a vacancy, the President may choose to designate as Acting DNI a different official who qualifies under the Vacancies Reform Act.

No other provision of IRTPA counsels a different result. In 2012, IRTPA was amended to authorize the President to fill vacancies in some ODNI offices with non-Senate-confirmed individuals drawn from other agencies in the intelligence community. *See* Intelligence Authorization Act for Fiscal Year 2012, Pub. L. No. 112-87, sec. 405(2), § 103(e), 125 Stat. 1876, 1889 (codified at 50 U.S.C. § 3025(e)). Congress achieved that result by expanding the third category of officials made eligible to serve as acting officials by the Vacancies Reform Act. *See* 5 U.S.C. § 3345(a)(3). As it applies to other agencies, section 3345(a)(3) limits the available pool to certain officials in the "Executive agency" where the vacancy occurs. *Id.* For the ODNI, however, section 3025(e) expands that pool to include officials within the entire "intelligence community." 50 U.S.C. § 3025(e). That expansion applies to all vacancies "within the Office of the Director of National Intelligence (other than that of the Director of National Intelligence)." *Id.*

Although Congress precluded resort to the expanded section 3345(a)(3) pool when selecting an Acting DNI, we cannot read that parenthetical as making the Vacancies Reform Act itself inapplicable to that position. To the contrary, by excepting the DNI from its tailored expansion of section 3345(a)(3), section 3025(e) implies that section 3345(a)(3) applies to the DNI in its non-expanded form, which means that the President may

---

365 F. Supp. 3d 1085, 1088–91 (S.D. Cal. 2019) (sustaining designation of Acting Attorney General); *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 139, 153–54 (D.D.C. 2019) (same), *aff'd on other grounds*, 920 F.3d 1 (D.C. Cir. 2019), *petition for cert. filed*, No. 19-296 (U.S. Aug. 29, 2019); *United States v. Santos-Caporal*, No. 18-cr-171, 2019 WL 468795, at *6–7 (E.D. Mo. Jan. 9, 2019) (same), *report and recommendation adopted by* 2019 WL 460563, at *1 (E.D. Mo. Feb. 6, 2019); *United States v. Smith*, No. 18-cr-115, 2018 WL 6834712, at *2 (W.D.N.C. Dec. 28, 2018) (same); *United States v. Peters*, No. 17-cr-55, 2018 WL 6313534, at *2–5 (E.D. Ky. Dec. 3, 2018) (same); *United States v. Valencia*, No. 17-cr-882, 2018 WL 6182755, at *2–4 (W.D. Tex. Nov. 27, 2018) (same), *appeal dismissed*, 940 F.3d 181 (5th Cir. 2019); *English v. Trump*, 279 F. Supp. 3d 307, 319–31 (D.D.C. 2018) (sustaining designation of Acting Director of the Bureau of Consumer Financial Protection), *appeal dismissed upon appellant's motion*, No. 18-5007, 2018 WL 3526296 (D.C. Cir. July 13, 2018).

select an Acting DNI from certain senior ODNI officers and employees. And section 3025(e) says nothing to alter the applicability of section 3345(a)(2), which enables the President to choose a Senate-confirmed officer to fill a vacancy when the Vacancies Reform Act is available.[2]

Congress could have easily excluded the DNI from coverage under the Vacancies Reform Act by, for instance, adding the DNI to the list of excluded offices in 5 U.S.C. § 3349c or specifying that section 3026(a)(6) applies notwithstanding the Vacancies Reform Act. *Cf.* 6 U.S.C. § 113(g)(1), (2) (specifying who shall serve as Acting Secretary of Homeland Security in certain circumstances "[n]otwithstanding chapter 33 of title 5"). But Congress took no such course. As a result, IRTPA is not the exclusive means of temporarily filling a vacancy in the position of DNI, regardless of whether there is an incumbent Principal Deputy DNI. Consistent with the opinions of this Office and the decisions of federal courts, the President would have discretion to designate as Acting DNI someone else who is eligible under the Vacancies Reform Act—either as an official in a Senate-confirmed position or as a senior ODNI official who satisfies the statute's pay and tenure requirements.

## B.

The Principal Deputy DNI is the first assistant to the DNI. *See* 50 U.S.C. § 3026(a)(5), (6); *Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179 (2001) ("[T]he phrase ['first assistant'] is a term of art that refers to the top deputy," and, "[u]nder this interpretation, the Principal Deputy would generally qualify as the 'first assistant.'"). Yet, because that position became vacant at the same time as the DNI, no one automatically became the Acting DNI under either IRTPA (50 U.S.C. § 3026(a)(6)) or the first-assistant provision of the Vacancies Reform Act (5 U.S.C. § 3345(a)(1)). Moreover, because an *Acting* Principal Deputy DNI does not satisfy either of those statutory provisions, nobody will be

---

[2] The legislative history of section 3025(e) does not indicate that Congress believed the exclusion of the DNI from the tailored expansion of section 3345(a)(3) would prevent the President from using the Vacancies Reform Act. A section-by-section analysis stated that the DNI would be excepted from the new authority and that, under section 3026(a)(6), "the Principal Deputy DNI is next in line." 157 Cong. Rec. 20160 (Dec. 14, 2011). The analysis noted that the amendment would not "modif[y] or preclude[] the utilization of sections 3345(a)(1) or (2) of title 5 to fill vacancies." *Id.*

eligible under them until a new Principal Deputy DNI is appointed by the President.

An Acting Principal Deputy DNI's ineligibility, by virtue of acting in that position, to become the Acting DNI is consistent with this Office's long-standing approach. More than forty years ago, we recognized "as a general rule of interpretation" that "a statute providing that a deputy shall perform the duties of the principal officer in case of a vacancy . . . should be construed as referring to an actual and not an acting deputy." Memorandum for John W. Dean III, Counsel to the President, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Acting Deputy Public Printer* at 2 (Jan. 26, 1973). In 1984, we explained that the "Office has consistently taken the position that statutes providing that a deputy shall perform the duties of his principal during absence or disability or in case of a vacancy refer to an actual and not to an acting deputy." Memorandum for D. Lowell Jensen, Associate Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Service of John C. Lawn as Acting Deputy Administrator of the Drug Enforcement Administration* at 3 (July 31, 1984). We have therefore "cautioned against a 'double acting' arrangement." *Id.*

Our rationale for continuing to disapprove double-acting arrangements is grounded in statutory text, executive practice, and common sense. In the Vacancies Reform Act, the reference in section 3345(a)(1) to "the first assistant to the [vacant] office" is best understood as a reference to an individual who has actually been appointed to—and is thus encumbering, for personnel-law purposes—the position of first assistant. In other words, only an individual encumbering the position of first assistant is *the* first assistant; the term does not include someone who holds another position but is temporarily performing the duties of the first assistant. That is consistent with the venerable principle that an office remains vacant even when someone has been assigned to perform its duties on a temporary basis. *See, e.g.*, *District Attorney—Temporary Appointment*, 16 Op. Att'y Gen. 538, 540 (1880) ("The office in no respects ceases to be vacant . . . for the reason that the [assignment] itself contemplates only a temporary mode of having the duties of the office performed."). And we construe analogous provisions similarly. Thus, for purposes of 50 U.S.C. § 3026(a)(6), only an individual appointed as, and encumbering the position of, Principal Deputy DNI is *the* Principal Deputy DNI.

Consistent with that view, when Presidents issue orders of succession as an advance exercise of their authority to name acting officials under the Vacancies Reform Act, they often specify that "[n]o individual who is serving in an office . . . in an acting capacity, by virtue of so serving, shall act as [the agency head] pursuant to this order."[3] In fact, such a proviso has been included in all four of the presidential memoranda that have established orders of succession for the DNI, going back to 2005.[4]

That practice is strongly supported by common sense. When a line of succession for one office lists several officials, we look for the first available official on the list. In doing so, we pay no heed to any underlying lines of succession that may exist for each of the listed officials. Thus, Congress has included fifteen Cabinet officials in the statutory line of succession to be Acting President when the offices of President and Vice President are vacant. *See* U.S. Const. art. II, § 1, cl. 6; 3 U.S.C. § 19(d)(1). Although Congress has specified that only officers appointed with the Senate's advice and consent will count as Cabinet officials for succession purposes, *see* 3 U.S.C. § 19(e), the line of succession for each Cabinet official typically includes multiple Senate-confirmed officers. For example, the order of succession for the office of Secretary of State includes literally hundreds of Senate-confirmed officers, from the Deputy Secretary of State to every Under Secretary, every Assistant Secretary,

---

[3] *E.g.*, Providing an Order of Succession Within the Department of Justice, Exec. Order No. 13787, § 2(a) (Mar. 31, 2017), 82 Fed. Reg. 16723, 16723 (Apr. 5, 2017); Providing an Order of Succession Within the Department of the Treasury, Exec. Order No. 13735, § 3(a) (Aug. 12, 2016), 81 Fed. Reg. 54709, 54709 (Aug. 17, 2016); Providing an Order of Succession in the Environmental Protection Agency and Amending Certain Orders on Succession, Exec. Order No. 13261, §§ 3(a), 4(a)–(i) (Mar. 19, 2002), 67 Fed. Reg. 13243, 13243–44 (Mar. 21, 2002).

[4] *See* Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 3(a) (Sept. 20, 2013), 78 Fed. Reg. 59159, 59159 (Sept. 25, 2013); Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 4(a) (Mar. 8, 2011), 76 Fed. Reg. 13499, 13499 (Mar. 11, 2011); Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 3(a) (Oct. 3, 2008), 73 Fed. Reg. 58869, 58869 (Oct. 8, 2008); Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 4(a) (Dec. 20, 2005), 70 Fed. Reg. 76375, 76375 (Dec. 23, 2005).

and eventually every "Chief[] of Mission, in the order in which they shall have taken the oath of office." Providing an Order of Succession Within the Department of State, Exec. Order No. 13251, § 2(a)–(m) (Dec. 28, 2001), 67 Fed. Reg. 1599, 1599–60 (Jan. 11, 2002). But, whenever any of those officers is the Acting Secretary of State, the presidential line of succession skips that person and passes on to the Secretary of the Treasury. *See* 3 U.S.C. § 19(d)(1); *Operation of the Twenty-Fifth Amendment Respecting Presidential Succession*, 9 Op. O.L.C. 65, 69 (1985) (noting that "the acting heads of departments . . . are not Presidential successors").

Similarly, within the Department of Justice, if the President does not invoke the Vacancies Reform Act, the statutory order of succession for the office of Attorney General includes the Deputy Attorney General, the Associate Attorney General, the Solicitor General, and several Assistant Attorneys General. *See* 28 U.S.C. § 508(a), (b). Each of those offices has its own principal deputy who is the first assistant to that office for purposes of the Vacancies Reform Act. *See* 28 C.F.R. § 0.137(b). Yet, when there is only an *Acting* Deputy Attorney General, the first available person in the line for Acting Attorney General is the Associate Attorney General; when there is also only an *Acting* Associate, the next available person in the line is the Solicitor General; and so on.[5]

The bar on double-acting arrangements finds inferential support in judicial decisions. When the Attorney General and Deputy Attorney General both resigned on October 20, 1973, the Solicitor General became Acting Attorney General. The district court in *United States v. Halmo*, 386 F. Supp. 593 (E.D. Wis. 1974), recognized that the Solicitor General had become Acting Attorney General not by virtue of being Acting Deputy Attorney General—i.e., by acting as the "first assistant" mentioned in the then-applicable versions of 5 U.S.C. § 3345 and 28 U.S.C. § 508(a)— but rather as Solicitor General under 28 U.S.C. § 508(b). *See* 386 F. Supp. at 595. And a 2009 court-of-appeals decision implicitly applied the bar on

---

[5] Thus, our 2007 opinion explained that "when the positions of Deputy Attorney General and Associate Attorney General are vacant—as they are now"—"[t]he Solicitor General is first in line" to "act as Attorney General." *Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. at 208. The opinion did not mention that, at the time, the Department had both an Acting Deputy Attorney General and an Acting Associate Attorney General.

double-acting arrangements by declining to treat an Acting Principal Deputy Assistant Secretary in the Department of the Interior as an Acting Assistant Secretary under section 3345(a)(1). *See Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009).[6]

### C.

The Principal Deputy DNI's resignation alongside the DNI meant that neither section 3026(a)(6) nor section 3345(a)(1) was available for automatic accession to the role of Acting DNI. As a result, no one would have become the Acting DNI in the absence of presidential action under the Vacancies Reform Act. Since 2005, however, Presidents have exercised their authority under the Vacancies Reform Act to prescribe, in advance, an order of succession that would apply to the DNI.

The current order of succession specifies, when the DNI and the Principal Deputy DNI are both vacant, a line of four officials to serve as Acting DNI, unless the President chooses to depart from that list. *See* Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence §§ 1, 3(c) (Sept. 20, 2013), 78 Fed. Reg. 59159, 59159 (Sept. 25, 2013) ("DNI Order of Succession"). The first position on the list is the Deputy DNI for Mission Integration. *Id.* § 1(a).[7] But the person who was serving in that position when the vacancies

---

[6] In *Schaghticoke Tribal Nation*, the appellant contended that the Associate Deputy Secretary of the Interior had violated the Vacancies Reform Act by performing a function that regulations assigned to the Assistant Secretary of the Interior for Indian Affairs. 587 F.3d at 134–35. At the time, the position of the Assistant Secretary was vacant, and the duties of Principal Deputy Assistant Secretary for Indian Affairs—the first assistant to the Assistant Secretary—were being performed by another official. *See* Brief for Defendants-Appellees (2d Cir. May 6, 2009) (No. 08-4735), 2009 WL 8189661, at *79. The appellant argued that the Acting Principal Deputy Assistant Secretary was functioning as the Acting Assistant Secretary under 5 U.S.C. § 3345(a)(1)—effectively urging the court to recognize a double-acting arrangement. *See* Reply Brief for Plaintiff-Appellant (2d Cir. June 8, 2009) (No. 08-4735), 2009 WL 8189664, at *35–36. The Second Circuit declined to do so. Instead, it concluded that the "Principal Deputy position was vacant" and that there was no Acting Assistant Secretary for Indian Affairs under section 3345(a)(1). 587 F.3d at 135.

[7] The 2013 order refers to the Deputy DNI for "Intelligence Integration," but in a restructuring completed in July 2018, that position was redesignated as the Deputy DNI for "Mission Integration."

occurred was ineligible to serve as Acting DNI because she was on detail to the ODNI from another agency and did not have a separate appointment from the DNI as a Deputy DNI.

The Vacancies Reform Act generally permits the President to designate certain senior agency officials to act in a vacant office; when a Senate-confirmed officer "of an Executive agency . . . dies, resigns, or is otherwise unable to perform the functions and duties of the office . . . the President . . . may direct an officer or employee *of such Executive agency* to perform the functions and duties of the vacant office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(3) (emphasis added). Because the statute requires the official to be an officer or employee "of such Executive agency," it excludes someone who has merely been detailed to that agency from somewhere else and does not have any independent claim to be an officer or employee of the agency receiving the detail. That conclusion is consistent with how details generally work in the Executive Branch. *See, e.g.*, 5 C.F.R. § 317.903(a) (explaining that, for details of Senior Executive Service employees, there is an "expectation that the employee will return to the official position of record upon expiration of the detail" and "[f]or purposes of pay and benefits, the employee continues to encumber the position from which detailed"). It is also consistent with our conclusion in 1986 that, if the Army assigned lawyers from the Judge Advocate General Corps to the Department of Justice, they would need formal appointments from the Attorney General before they could represent the United States in litigation, because 28 U.S.C. § 516 reserves the conduct of litigation on behalf of the United States to "officers of the Department of Justice." *Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 & n.2 (1986). Moreover, our conclusion is consistent with Congress's tailored expansion of section 3345(a)(3) for purposes of most ODNI positions covered by the Vacancies Reform Act, which reflected the fact that so many ODNI staff members are, in practice, detailees from other intelligence-community elements, thus shrinking the pool of senior agency officials who would otherwise be eligible under section 3345(a)(3). *See* 157 Cong. Rec. 20160 (Dec. 14, 2011) (section-by-section analysis of 2012 amendment, noting "the relatively small size of the ODNI" and "the fact that a significant number" of its personnel "are on detail to the office").

To be eligible to serve as Acting DNI under section 3345(a)(3), or under the order of succession invoking that provision, a detailee at the ODNI

must have held a separate appointment within that "agency" for at least 90 days in the year preceding the vacancy. 5 U.S.C. § 3345(a)(3); *see* 50 U.S.C. § 3025(e) (modifying this aspect of section 3345(a)(3) only for vacancies in the ODNI "other than that of the [DNI]"); *see also* 50 U.S.C. § 3025(c)(14) (authorizing the DNI to "establish" additional "offices and officials" in the ODNI).[8] Because the Deputy DNI for Mission Integration did not satisfy this requirement, she was ineligible to serve as Acting DNI under section 3345(a)(3).

### D.

The next officer on the current order of succession is the NCTC Director. *See* DNI Order of Succession § 1(b), 78 Fed. Reg. at 59159. Because the NCTC Director was appointed by the President with the advice and consent of the Senate, 50 U.S.C. § 3056(b)(1), he was eligible to serve as Acting DNI under 5 U.S.C. § 3345(a)(2).

The NCTC Director's service as Acting DNI does involve one statutory wrinkle. IRTPA provides that the NCTC Director "may not simultaneously serve in any other capacity in the executive branch." 50 U.S.C. § 3056(b)(2). We do not, however, read this provision as categorically forbidding the NCTC Director from serving as Acting DNI. Instead, section 3056(b)(2) permits the Director of NCTC to serve as Acting DNI, and to continue to hold the office of NCTC Director, so long as he does not, while Acting DNI, also perform the functions and duties of the NCTC Director. That conclusion follows from the way section 3056(b)(2) is phrased—as a restriction on *simultaneously serving* in any other capacity. It comports with the apparent purpose of the provision: to ensure that the person performing the functions and duties of the Director of NCTC does so with a degree of independence and without competing obligations. And it is consistent with the orders of succession for the DNI issued by Presidents George W. Bush and Barack Obama. In his 2011 and 2013 memoranda, President Obama expressly accounted for section 3056(b)(2) by specifying: "In the event that the Director of the National Counterterror-

---

[8] The rate of pay for the ODNI position to which the detailee is separately appointed would also need to be "equal to or greater than the minimum rate of pay payable for a position at GS–15 of the General Schedule," 5 U.S.C. § 3345(a)(3)(B), even though, as a practical matter, the detailee could draw that salary only from the home agency, *see id.* §§ 5533, 5535.

ism Center acts as and performs the functions and duties of the DNI . . . , that individual shall not simultaneously serve as Director of the National Counterterrorism Center during that time, in accordance with 50 U.S.C. 3056." DNI Order of Succession § 3(d), 78 Fed. Reg. at 59159; Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 4(d) (Mar. 8, 2011), 76 Fed. Reg. 13499, 13499 (Mar. 11, 2011). Although President Bush did not expressly acknowledge the prohibition on simultaneous service, he also included the NCTC Director in his 2008 order of succession. *See* Presidential Memorandum for the Director of National Intelligence, Designation of Officers of the Office of the Director of National Intelligence to Act as Director of National Intelligence § 1(e) (Oct. 3, 2008), 73 Fed. Reg. 58869, 58869 (Oct. 8, 2008).

IRTPA elsewhere contemplates a conceptually similar arrangement, whereby an officer may continue to hold another office but is legally disabled from exercising some of the duties of that office during service within the ODNI. Under the statute, a commissioned officer of the Armed Forces may serve as DNI or Principal Deputy DNI and continue to receive military pay and allowances but may not, while so "serving," be supervised or controlled by, or exercise supervision or control over, any officer or employee of the Department of Defense. 50 U.S.C. § 3026(c)(4), (6). In that instance, the commissioned officer will retain his military office but will be disabled from exercising certain duties or responsibilities of that office while serving at the ODNI. We think the same thing is true with respect to the restriction on dual service by the NCTC Director. Section 3056(b)(2) permits the NCTC Director to continue occupying that office, even while disabling him from performing his normal duties during any period in which he serves as Acting DNI.

In support of this conclusion, we again find instructive the 1986 opinion concerning the assignment of Army lawyers to the Department of Justice. In that opinion, then–Deputy Assistant Attorney General Samuel Alito concluded that the Posse Comitatus Act, which generally precludes "any part of the Army" from being used for law enforcement, 18 U.S.C. § 1385, "would not be implicated" if military personnel "were detailed on a full-time basis" to the Department of Justice and they then "functioned on a day-to-day basis in an entirely civilian capacity under the supervision of civilian personnel." *Assignment of Army Lawyers to the Department of*

*Justice*, 10 Op. O.L.C. at 121. The opinion distinguished that situation from one in which military lawyers would be "assigned on a part-time basis to perform civilian law enforcement functions along with their regularly assigned military duties"—a situation that would raise "serious questions" under the Posse Comitatus Act. *Id.* For similar reasons, we believe that the prohibition on "simultaneous[] serv[ice]" in section 3056(b)(2) is not implicated when the President designates the NCTC Director to serve as Acting DNI, so long as, while so serving, the NCTC Director does not perform the functions and duties of that office.

Accordingly, we advised that, upon the resignations of the DNI and Principal Deputy DNI, the NCTC Director would become the Acting DNI without the need for further action by the President, as contemplated by the 2013 order of succession, which was promulgated as an advance exercise of the President's authority under the Vacancies Reform Act. Under section 3056(b)(2), however, he would be unable to exercise the functions and duties of the NCTC Director while serving as Acting DNI.

## III.

We further considered whether anyone could serve as Acting NCTC Director while the incumbent served as Acting DNI. Because the NCTC Director is legally disabled by section 3056(b)(2) from performing the functions and duties of his own office while serving as Acting DNI, this presents an unusual situation in which the Vacancies Reform Act may be used to designate an Acting NCTC Director while there is still an incumbent in that office. We have generally advised that when one official serves in an acting capacity under the Vacancies Reform Act, another official may not be designated under that statute to act in the encumbered position. In other words, the agency may not "backfill" the position. In such cases, the incumbent officeholder will continue to occupy both positions, absent some legal restriction on joint service. That rationale, however, does not apply when, as with the NCTC Director, the incumbent is legally precluded from serving in both capacities at once.

Prior to the Vacancies Reform Act, we had recognized the general expectation that an acting officer will continue to occupy his own office and perform its duties even while he is temporarily acting in another office. *See, e.g.*, *Legality of Designation of Certain Acting Officials by the Secretary of Energy*, 2 Op. O.L.C. 113, 115 (1978) (noting the practical diffi-

culties that may arise when an acting official can effectively perform the additional duties only "on a part-time basis"). Congress has long prescribed that someone "performing the duties of a vacant office" generally "may not receive pay in addition to the pay for his regular office." 5 U.S.C. § 5535(a).

The 1998 enactment of the Vacancies Reform Act did not alter that understanding. As we have recognized, "duties arising under the Vacancies Reform Act can be regarded as part and parcel" of the underlying office that makes one eligible to be an acting officer. *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. at 122 n.3. That is especially true when someone is a first assistant or other deputy to the vacant office, where day-to-day tasks often involve delegated functions of the principal and an important duty of the lower position is to be ready to stand in for the principal when needed. Thus, we have continued to read section 3345(a) as resting on the premise that an acting officer will ordinarily perform the duties of both his office and the vacant office. Otherwise, each application of the statute could begin a cascade of acting arrangements within an agency, as one official after another temporarily moves into a different position. We have also reasoned that, because almost all officials may delegate a significant portion of their duties, they can typically accommodate, at least for temporary periods, the need to carry out the duties of two positions. Put simply, an acting official remains able to perform the most important duties of each position, and he may be expected to delegate the exercise of the more mundane duties under his supervision. In such circumstances, the acting official may well be busier during the period of joint service, but he still encumbers (and receives the pay of) only the underlying position, which is not vacant.

By contrast, in this instance, the NCTC Director is temporarily precluded from performing the duties of that office, whether or not those duties are delegable. The Vacancies Reform Act applies when a Senate-confirmed officer of an Executive agency "dies, resigns, *or is otherwise unable* to perform the functions and duties of the office." 5 U.S.C. § 3345(a) (emphasis added). While serving as Acting DNI, the NCTC Director is "unable to perform the functions and duties of [his] office"— not because he is merely preoccupied or away from his usual desk, but because section 3056(b)(2) forbids him from doing so. The statutory prohibition thus resembles an ethical constraint that necessitates an across-the-board, but temporary, recusal. When an official must recuse,

someone else is typically able to act in his place with respect to the matter concerned.[9] Here, there is no ethical constraint, but a statute mandates something functionally equivalent to a recusal, as a result of which some-one else must perform the NCTC Director's duties.

Accordingly, when the NCTC Director became the Acting DNI, the Vacancies Reform Act permitted the designation of someone else as Acting NCTC Director. The President could have selected anyone who was eligible under section 3345(a)(2) or the expanded form of section 3345(a)(3) that applies to most ODNI offices under 50 U.S.C. § 3025(e). Instead, the President allowed the default under the Vacancies Reform Act to take effect. Russell Travers, the incumbent Deputy Director of the National Counterterrorism Center, who was the first assistant to the NCTC Director, became the Acting NCTC Director—just as he had in the period before Mr. Maguire was appointed as NCTC Director. *See* ODNI, Acting Director, National Counterterrorism Center, www.dni.gov/index. php/nctc-who-we-are/deputy-director-nctc (last visited Nov. 15, 2019). When Mr. Maguire ceases to serve as Acting DNI, he will be able to resume his duties as the NCTC Director (the position he still encumbers and for which he is being paid), at which time Mr. Travers will cease to be the Acting NCTC Director.

## IV.

For the reasons set forth above, we concluded that, in designating an Acting DNI, the President could choose anyone who is eligible under the Vacancies Reform Act. *See* 5 U.S.C. § 3345(a)(2), (3). The President could therefore select the Senate-confirmed NCTC Director, who may serve as Acting DNI subject to the time limits of the Vacancies Reform Act. *See id.* § 3346. The President could in turn invoke the Vacancies Reform Act to authorize someone to serve as Acting NCTC Director because, while serving as Acting DNI, the NCTC Director is rendered

---

[9] *See, e.g.*, *In re Grand Jury Investigation*, 916 F.3d 1047, 1056 (D.C. Cir. 2019) (concluding that the Deputy Attorney General had become "the Acting Attorney General" under 28 U.S.C. § 508(a) when "the Attorney General's single-issue recusal . . . created a vacancy that the Deputy Attorney General was eligible to fill"); *Muffley ex rel. NLRB v. Spartan Mining Co.*, 570 F.3d 534, 539 & n.1 (4th Cir. 2009) (affirming district court's conclusion that, when the General Counsel was recused from a case, a Deputy General Counsel properly carried out the General Counsel's functions under 5 U.S.C. § 3345(a)(1)).

"unable to perform the functions and duties of" NCTC Director. *Id.* § 3345(a); *see* 50 U.S.C. § 3056(b)(2). Here, in the absence of an alternative presidential designation, the NCTC Director's first assistant would automatically serve in that role. *See* 5 U.S.C. § 3345(a)(1).

CURTIS E. GANNON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*