# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 8, 2018      Decided February 26, 2019

No. 18-3052

IN RE: GRAND JURY INVESTIGATION

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-gj-00034)

*Paul D. Kamenar* argued the cause and filed the briefs for appellant.

*James C. Martin* argued the cause for *amicus curiae* Concord Management and Consulting LLC in support of appellant. With him on the briefs were *Colin E. Wrabley*, *Eric A. Dubelier*, and *Katherine J. Seikaly*.

*Montgomery Blair Sibley* was on the brief for *amicus curiae* Montgomery Blair Sibley in support of appellant.

*Michael R. Dreeben*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Robert S. Mueller*, *III*, Special Counsel, and *Jeannie S. Rhee* and *Adam C. Jed*, Attorneys.

*Elizabeth B. Wydra* and *Ashwin P. Phatak* were on the brief for *amici curiae* Constitutional and Administrative Law Scholars in support of appellee.

Before: HENDERSON, ROGERS and SRINIVASAN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Andrew Miller appeals an order holding him in contempt for failing to comply with grand jury subpoenas served on him by Special Counsel Robert S. Mueller, III.  He contends the Special Counsel's appointment is unlawful under the Appointments Clause of the Constitution, and therefore the contempt order should be reversed.  We affirm.

## I.

The relevant statutory and regulatory authority relating to the context in which this appeal arises are as follows.

### A.

The Attorney General is the head of the Department of Justice ("the Department").  28 U.S.C. § 503.  The Attorney General must be appointed by the President with the advice and consent of the Senate.  *Id.*  Congress also created the position of Deputy Attorney General, who also must be appointed by the President with the advice and consent of the Senate.  *Id.* § 504. Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department," *id.* § 509, and has empowered the Attorney General to authorize other Department officials to perform the functions of the Attorney General, *id.* § 510.  Congress has also authorized the Attorney General to commission attorneys "specially retained under the authority of the Department" as "special assistant to the Attorney General or special attorney," *id.* § 515(b), and provided "any attorney specially appointed by the Attorney

General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized by law to conduct," *id.* § 515(a). Congress has also provided for the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States." *Id.* § 533(1). These statutes authorize the Attorney General to appoint special counsels and define their duties. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 (1974).

At various times, independent counsels within the Department have conducted investigations and instituted criminal prosecutions pursuant to the Ethics in Government Act of 1978 ("the Act"). The Act authorized the appointment of an independent counsel upon a referral of a matter by the Attorney General to a three-judge court that could name an independent counsel. *See* 28 U.S.C. §§ 591–599 (expired). In 1999, shortly before these provisions expired, the Department issued regulations to "replace" the Act with a procedure within the Executive Branch for appointing special counsels. *Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999); 28 C.F.R. §§ 600.1–600.10. A special counsel is to be afforded wide discretion in the conduct of the investigation while "ultimate responsibility for the matter and how it is handled" resides in the Attorney General. 64 Fed. Reg. at 37,038.

Under Department regulations, the Attorney General establishes the Special Counsel's jurisdiction and determines whether additional jurisdiction is necessary to resolve the assigned matter or matters. 28 C.F.R. § 600.4(a), (b). The Special Counsel is required to "comply with the rules, regulations, procedures, practices and policies of the Department of Justice." *Id.* § 600.7(a). Additionally, the "Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial

step." *Id.* § 600.7(b). And the Special Counsel must notify the Attorney General of important events in the investigation under the Department's Urgent Reports guidelines. *Id.* § 600.8(b). The regulations provide that after review the Attorney General may conclude that a contemplated action is "so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id.* § 600.7(b). During review, the Attorney General is to "give great weight" to the views of the Special Counsel. *Id.*

The regulations also address discipline, removal, and the resources for the Special Counsel's investigation. The Attorney General has authority to discipline and to remove a Special Counsel for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." *Id.* § 600.7(d). The Attorney General establishes the budget for the Special Counsel's investigation, and is to determine whether the investigation should continue at the end of each fiscal year. *Id.* § 600.8(a)(1), (a)(2).

**B.**

The circumstances giving rise to this appeal began on March 2, 2017, when then-Attorney General Jeff Sessions recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States." Press Release No. 17-237, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017). Department regulations provide that "no employee shall participate in a criminal investigation or prosecution if he has a personal or political relationship" with any person "involved in the conduct that is the subject of the investigation or prosecution." 28 C.F.R. § 45.2. Attorney General Sessions announced in a press release that "[c]onsistent with the succession order for the Department of Justice," the then-

Acting Deputy Attorney General Dana Boente "shall act as and perform the functions of the Attorney General with respect to any matters from which I have recused myself to the extent they exist." Press Release No. 17-237. During testimony before the U.S. House of Representatives Permanent Select Committee on Intelligence on March 20, 2017, then-Director James Comey confirmed that the Federal Bureau of Investigation ("FBI") was investigating the Russian Government's efforts to interfere in the 2016 U.S. presidential election, including investigating the nature of any links between President Trump's campaign and the Russian Government.

On April 26, 2017, Rod J. Rosenstein was sworn in as Deputy Attorney General. By Appointment Order of May 17, 2017, invoking "the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515," General Rosenstein appointed Robert S. Mueller, III, to serve as Special Counsel for the Department to investigate the Russian Government's efforts to interfere in the 2016 presidential election and "related matters" and to prosecute any federal crimes uncovered during the investigation. U.S. Dep't of Justice, Off. of Dep. Att'y Gen., Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference With the 2016 Presidential Election and Related Matters (May 17, 2017) ("Appointment Order"). The Appointment Order stated that "Sections 600.4 through 600.10 of Title 28 of the Code of the Federal Regulations" shall apply to the Special Counsel. *Id.*

Approximately one year later, Special Counsel Mueller issued multiple grand jury subpoenas requiring Andrew Miller to produce documents and to appear before the grand jury. After Miller failed to appear, the Special Counsel moved to compel his testimony and for an order to show cause why Miller should not be held in civil contempt for failure to appear

before the grand jury. Miller filed a motion to quash the subpoenas on the ground that the Special Counsel's appointment violated the Appointments Clause of the Constitution, adopting by reference arguments made in a separate case by Concord Management and Consulting LLC ("Concord Management"), which was also being prosecuted by the Special Counsel. The district court denied the motion to quash and held Miller in civil contempt. *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 667 (D.D.C. 2018).

## II.

On appeal, Miller challenges the authority of Special Counsel Mueller on the grounds that his appointment is unlawful under the Appointments Clause because: (1) the Special Counsel is a principal officer who was not appointed by the President with the advice and consent of the Senate; (2) Congress did not "by law" authorize the Special Counsel's appointment; and (3) the Special Counsel was not appointed by a "Head of Department" because the Attorney General's recusal from the subject matter of the Special Counsel's investigation did not make the Deputy Attorney General the Acting Attorney General. This court's review is *de novo*. *See Recording Indus. Ass'n of America v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233 (D.C. Cir. 2003).

The Appointments Clause in Article II states:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the

> Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

## A.

As interpreted by the Supreme Court, the Appointments Clause distinguishes between "principal officers," who must be nominated by the President with advice and consent of the Senate, and "inferior officers," who may be appointed by the President alone, or by heads of departments, or by the judiciary, as Congress allows. *Morrison v. Olson*, 487 U.S. 654, 670–71 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 132 (1976)). Thus, if Special Counsel Mueller is a principal officer, his appointment was in violation of the Appointments Clause because he was not appointed by the President with advice and consent of the Senate. Binding precedent instructs that Special Counsel Mueller is an inferior officer under the Appointments Clause.

An inferior officer is one "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 663 (1997). In *Edmond*, the Supreme Court applied three factors to determine whether an officer was inferior: degree of oversight, final decision-making authority, and removability. *Id.* at 663–66. According to Miller, those considerations point to Special Counsel Mueller being a principal, rather than inferior, officer because the Office of Special Counsel regulations impose various limitations on the Attorney General's ability to exercise effective oversight of the Special Counsel. But as foreshadowed in this court's opinion in *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), a supervisor's ability to rescind

provisions assuring an officer's independence can render that officer inferior. There, this court recognized that an independent counsel was an inferior officer because his office was created pursuant to a regulation and "the Attorney General may rescind this regulation at any time, thereby abolishing the Office of Independent Counsel." *Id.* at 56; *see Morrison*, 487 U.S. at 721 (Scalia, J., dissenting).

The Attorney General, an officer appointed by the President with the advice and consent of the Senate, has authority to rescind at any time the Office of Special Counsel regulations or otherwise render them inapplicable to the Special Counsel. Unlike the independent counsel in *Morrison*, 487 U.S. at 660–64, whose independence and tenure protection were secured by Title VI of the Ethics in Government Act, Special Counsel Mueller is subject to greater executive oversight because the limitations on the Attorney General's oversight and removal powers are in regulations that the Attorney General can revise or repeal, *see* 5 U.S.C. § 553(a)(2), (b)(A), (b)(B), (d)(3); absent such limitations, the Attorney General would retain plenary supervisory authority of the Special Counsel under 28 U.S.C. § 509. Furthermore, even if at the time of the appointment of Special Counsel Mueller only the Attorney General could rescind the regulations, the Acting Attorney General could essentially accomplish the same thing with specific regard to Special Counsel Mueller by amending his Appointment Order of May 17, 2017, to eliminate the Order's good cause limitations on the Special Counsel's removal (on which Miller focuses particular attention).

In either event, Special Counsel Mueller effectively serves at the pleasure of an Executive Branch officer who was appointed with the advice and consent of the Senate. *See* 28 U.S.C. §§ 509, 515(a), 516; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010);

9

Appointment Order (May 17, 2017). The control thereby maintained means the Special Counsel is an inferior officer. *See Sealed Case*, 829 F.2d at 56–57. Miller's contention that Special Counsel Mueller is a principal officer under the Appointments Clause thus fails.

**B.**

The question whether Congress has "by law" vested appointment of Special Counsel Mueller in the Attorney General has already been decided by the Supreme Court. In *United States v. Nixon*, 418 U.S. 683, 694 (1974), the Court stated: "[Congress] has also vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533." In acting pursuant to those statutes, the Court held, the Attorney General validly delegated authority to a special prosecutor to investigate offenses arising out of the 1972 presidential election and allegations involving President Richard M. Nixon. *Id.*

Miller contends, unpersuasively, that the quoted sentence in *Nixon*, 418 U.S. at 694, is dictum because the issue whether the Attorney General had statutory authority to appoint a special prosecutor was not directly presented and the Supreme Court did not analyze the text of the specific statutes. It is true that a statement not necessary to a court's holding is dictum. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 842 (1985); *Sierra Club v. EPA*, 322 F.3d 718, 724 (D.C. Cir. 2003); *Martello v. Hawley*, 300 F.2d 721, 722–23 (D.C. Cir. 1962). But Miller misreads *Nixon*, for the Supreme Court was presented with the question whether a justiciable controversy existed. When the Special Prosecutor issued a subpoena to the President to produce certain recordings and documents, the President moved to quash the subpoena, asserting a claim of executive privilege, *id.* at 688, and maintained the claim was

nonjusticiable because it was "intra-executive" in character, *id.* at 689. The Supreme Court held there was a justiciable controversy because the regulations issued by the Attorney General gave the Special Prosecutor authority to contest the President's invocation of executive privilege during the investigation. *Id.* at 695–97. In this analysis, the Attorney General's statutory authority to issue the regulations was a necessary antecedent to determining whether the regulations were valid, and, therefore, was necessary to the decision that a justiciable controversy existed. The Supreme Court's quoted statement regarding the Attorney General's power to appoint subordinate officers is, therefore, not dictum. Moreover, under this court's precedent, "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *United States v. Fields*, 699 F.3d 518, 522 (D.C. Cir. 2012).

Furthermore, in *Sealed Case*, 829 F.2d at 52–53, this court recognized that the statutory scheme creating the Department vests authority in the Attorney General to appoint inferior officers to investigate and to prosecute matters with a level of independence. There, the Attorney General appointed an independent counsel and promulgated regulations to create an office to investigate whether Lieutenant Colonel Oliver L. North and other officials violated federal criminal law in connection with the shipment or sale of military arms to Iran and the transfer or diversion of funds connected to any sales (referred to as the Iran/Contra matter). The Attorney General also authorized the independent counsel to prosecute any violations of federal criminal laws uncovered during investigation of the Iran/Contra matter. *Id.* at 52. North refused to comply with a grand jury subpoena, arguing that the independent counsel's appointment was invalid. *Id.* at 54–55. This court disagreed:

> We have no difficulty concluding that the Attorney General possessed the statutory authority to create the Office of Independent Counsel: Iran/Contra and to convey to it the 'investigative and prosecutorial functions and powers' described in . . . the regulation. . . . While [5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515] do not explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision, we read them as accommodating the delegation at issue here.

*Id.* at 55.

The issue before the court was whether the independent counsel was authorized to investigate and to prosecute officials in regard to the Iran/Contra matter. As such, the Attorney General's authority to appoint an independent counsel was antecedent to deciding whether the Attorney General validly delegated authority to the independent counsel. The court's quoted statements regarding the Attorney General's statutory authority to appoint an independent counsel are, therefore, not dicta as Miller suggests.

To the extent Miller incorporates arguments of Amicus Curiae Concord Management, he maintains that in *Sealed Case* this court held only that the Attorney General had authority to delegate powers to an already appointed position inside the Department, not authority to appoint a new special counsel outside of the Department. The court expressly noted that the statutory scheme authorized the Attorney General to delegate powers to "others within the Department of Justice." *Id.* at 55 n.29. Miller is correct that in that case, the independent counsel had two parallel appointments: one from the Attorney General to the Office of Independent Counsel: Iran/Contra and an earlier one from a Special Division under the Ethics in

Government Act, 28 U.S.C. § 593(b). But this court explicitly declined to address whether the independent counsel's initial appointment under the Act was valid, thereby avoiding the need to consider any constitutional questions raised by the Act. *Sealed Case*, 829 F.2d at 55–56, 62; *see* Appellee Br. 34. Therefore, this court assumed that the independent counsel did not already hold a position inside the Department when it held that the Attorney General's appointment of him to the Office of Independent Counsel: Iran/Contra was valid. That analysis applies equally to the facts of the instant case.

Because binding precedent establishes that Congress has "by law" vested authority in the Attorney General to appoint the Special Counsel as an inferior officer, this court has no need to go further to identify the specific sources of this authority. *See generally Grand Jury Investigation*, 315 F. Supp. 3d at 651–58; *see also* 28 U.S.C. §§ 515(b), 533(1). Miller's cursory references to a "clear statement" argument he presented to the district court are insufficient to preserve that issue for appeal and it is forfeited. *New York Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983); *see United States v. Olano*, 507 U.S. 725, 733 (1993).

## C.

The statutory and regulatory scheme demonstrate, contrary to Miller's contention, that at the time of Special Counsel Mueller's appointment, Acting Attorney General Rosenstein was the "Head of Department" under the Appointments Clause as to the matter on which the Attorney General was recused. The Attorney General is the head of the Department of Justice, 28 U.S.C. § 503, and an Acting Attorney General becomes the head of the Department when acting in that capacity because an acting officer is vested with the same authority that could be exercised by the officer for whom he acts, *Ryan v. United*

*States*, 136 U.S. 68, 81 (1890); *Keyser v. Hitz*, 133 U.S. 138, 145–46 (1890); *see also Acting Officers*, 6 Op. O.L.C. 119, 120 (1982).

Miller's view that the Attorney General's recusal did not make the Deputy Attorney General the "Acting" Attorney General, and, therefore, the Deputy Attorney General lacked authority to appoint Special Counsel Mueller as an inferior officer, ignores the statutory scheme. Section 508(a) of Title 28 provides: "In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office." The word "disability" means the "inability to do something" or "lack of legal qualification to do a thing." *Webster's Third New International Dictionary* 642 (1981). Congress is presumed to use words to have their ordinary meaning absent indication to the contrary. *Russello v. United States*, 464 U.S. 16, 21 (1983); *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Miller would qualify Congress's meaning as limited to a "wholesale absence or disability, not a recusal to act on a single issue." Appellant Br. 36–41. His interpretation is contrary to the structure Congress created for the Department whereby the Deputy Attorney General can carry on when the Attorney General is unable to act on a matter. A statute and Department regulation disqualify any officer or Department employee from participating in an investigation or prosecution that may involve "a personal, financial, or political conflict of interest, or the appearance thereof." 28 U.S.C. § 528; *see* 28 C.F.R. § 45.2(a). Department regulation 28 C.F.R. § 45.2(a) bars involvement where there is a conflict of interest, and then-Attorney General Sessions invoked that regulation as to the investigation of Russia's interference in the 2016 presidential campaign. Hon. Jeff Sessions, Attorney General, Prepared Remarks to the United States Senate Select Committee on

Intelligence (June 13, 2017). At the time of the Special Counsel's appointment then, the Attorney General had a "disability" because he lacked legal qualification to participate in any matters related to that conflict. *See Russello*, 464 U.S. at 21; *Webster's Third New International Dictionary* 642 (1981). Under Miller's view, there could be no Attorney General, acting or otherwise, to be in charge of the matter.

Our understanding of Congress's use of the word "disability" in Section 508 accords with courts' interpretations of Rule 25(a) of the Federal Rules of Criminal Procedure. Rule 25(a) provides that if a judge cannot proceed to preside at a trial due to "death, sickness, or other disability," another judge may complete the trial. Courts have interpreted "disability" to include recusal. *In re United States*, 614 F.3d 661, 661 (7th Cir. 2010); *United States v. Hall*, 171 F.3d 1133, 1153 (8th Cir. 1999); *United States v. Sartori*, 730 F.2d 973, 976 (4th Cir. 1984); *Bennett v. United States*, 285 F.2d 567, 572 (5th Cir. 1960). The authorities Miller cites to support his interpretation — the Vacancies Act of 1868 and *Moog Inc. v. United States*, Misc. No. Civ-90-215E, 1991 WL 46518 (W.D.N.Y. Apr. 1, 1991) — provide no basis to conclude Congress intended a different meaning of "disability" in Section 508(a). In challenging the validity of the analogy on the basis that all federal judges have been appointed by the President with the advice and consent of the Senate, 28 U.S.C. § 133, Miller overlooks that by statute so is the Deputy Attorney General, 28 U.S.C. § 504.

Therefore, the Attorney General's single-issue recusal is a "disability" that created a vacancy that the Deputy Attorney General was eligible to fill. Miller points to no basis on which this court could conclude that Congress did not intend the term "disability" to have its ordinary meaning. *See Russello*, 464 U.S. at 21.

Still Miller maintains that Section 508 does not make the Deputy Attorney General an "acting" officer but only authorizes the Deputy Attorney General to perform the duties of the Attorney General's office and the Attorney General remains the "Head of Department" for Appointments Clause purposes. Congress has authorized the Deputy Attorney General to perform "all the duties of th[e] office" in case of a vacancy, 28 U.S.C. § 508(a), such that the Deputy becomes the "Acting" Attorney General. As to the recused matter, the Acting Attorney General has authority to appoint inferior officers because that is part of the authority that could be exercised by the Attorney General. Miller's position that the Deputy Attorney General only becomes the "Acting" Attorney General if the Federal Vacancies Reform Act, 5 U.S.C. § 3345, is triggered — and that the Act is triggered, he maintains, only upon a complete inability to perform the functions and duties of the Attorney General's office — overlooks that the Act explicitly provides it is not the exclusive means to designate an "acting" official. 5 U.S.C. § 3347(a)(1)(B). Other statutes may temporarily authorize an officer or employee to perform the functions and duties of a specified office. *Id.* Miller does not explain why 28 U.S.C. § 508 is not such a statute that temporarily authorizes an officer to temporarily perform the duties of the Attorney General. *See* S. Rep. No. 105-250, at 15–16 (1998); *see also Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013)*, aff'd on other grounds*, 134 S. Ct. 2550 (2014). Therefore, Special Counsel Mueller was properly appointed by a head of Department, who at the time was the Acting Attorney General.

Because the Special Counsel is an inferior officer, and the Deputy Attorney General became the head of the Department by virtue of becoming the Acting Attorney General as a result of a vacancy created by the disability of the Attorney General

through recusal on the matter, we hold that Miller's challenge to the appointment of the Special Counsel fails.  Accordingly, we affirm the order finding Miller in civil contempt.