# United States Court of Appeals for the Federal Circuit

---

**IN RE: PALO ALTO NETWORKS, INC.,**
*Petitioner*

---

2022-145

---

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2021-01151 and PGR2021-00108.

---

**ON PETITION**

---

DOUGLAS HALLWARD-DRIEMEIER, Ropes & Gray LLP, Washington, DC, argued for petitioner Palo Alto Networks, Inc. Also represented by SCOTT ANTHONY MCKEOWN, MATTHEW RIZZOLO; JAMES RICHARD BATCHELDER, ANDREW T. RADSCH, MARK D. ROWLAND, East Palo Alto, CA.

PAUL J. ANDRE, Kramer Levin Naftalis & Frankel LLP, Redwood Shores, CA, argued for respondent Centripetal Networks, Inc. Also represented by JAMES R. HANNAH, LISA KOBIALKA, HANNAH YUNKYUNG LEE; SCOTT M. KELLY, BLAIR A. SILVER, BRADLEY CHARLES WRIGHT, Banner & Witcoff, Ltd., Washington, DC.

JOSHUA MARC SALZMAN, Civil Division, Appellate Staff, United States Department of Justice, Washington, DC, argued for respondent United States Patent and Trademark Office. Also represented by BRIAN M.

BOYNTON, SCOTT R. MCINTOSH; KAKOLI CAPRIHAN, MICHAEL S. FORMAN, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

———————————

Before DYK, REYNA, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring in the result filed by *Circuit Judge* REYNA.

DYK, *Circuit Judge.*

## O R D E R

Palo Alto Networks, Inc. ("PAN") petitions for a writ of mandamus to compel the United States Patent and Trademark Office ("USPTO") to accept and consider its Requests for Director Rehearing of decisions denying institution of *inter partes* review ("IPR") and post grant review ("PGR") for patents owned by Centripetal Networks, Inc. ("Centripetal"). PAN argues that the Director's current policy of refusing to accept such requests is contrary to the Appointments Clause of the U.S. Constitution, Art. II, § 2, cl. 2, as interpreted by the Supreme Court in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). The USPTO and Centripetal oppose, and oral argument was held on June 21, 2022.

We deny the petition, concluding that there has been no violation of the Appointments Clause.

### BACKGROUND

### I

"In 2011, Congress enacted the Leahy-Smith America Invents Act ('AIA'), Pub. L. No. 112-29, 125 Stat. 284 (2011), to 'improve patent quality and limit unnecessary

and counterproductive litigation costs.' H.R. Rep. 112-98, pt. I, at 40 (2011)." *Regents of the Univ. of Minn. v. LSI Corp.*, 926 F.3d 1327, 1335 (Fed. Cir. 2019). Among its provisions, the AIA created IPR and PGR proceedings to provide opportunities for the USPTO to "take a second look at patents previously issued by the [agency]." *Arthrex*, 141 S. Ct. at 1977.

The Patent Trial and Appeal Board ("PTAB" or "Board") is charged with rendering final written decisions in such proceedings. 35 U.S.C. §§ 318(a), 328(a).[1] Typically, and in *Arthrex* itself, the members of the Board making these decisions are all administrative patent judges ("APJs"), who are appointed by the Secretary of Commerce and are only removable for cause. § 6(a); *Arthrex*, 141 S. Ct. at 1985.[2] Each proceeding is "heard by at least 3 members of the [PTAB], who shall be designated by the Director," § 6(c), and "the [PTAB] shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner," §§ 318(a), 328(a). As enacted, § 6(c) provided that "[o]nly the [PTAB] may grant rehearings." At the conclusion of the proceedings and any related appeals, "the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable." §§ 318(b), 328(b).

In *Arthrex*, a patentee, whose patent claims had been found unpatentable by the PTAB, argued that APJs were principal officers not properly appointed by the President,

---

[1]   All citations to statutory provisions refer to Title 35 unless otherwise indicated.

[2]   Although a PTAB panel is typically comprised solely of APJs, the statute provides that the PTAB also includes "[t]he Director, the Deputy Director, the Commissioner for Patents, [and] the Commissioner for Trademarks." § 6(a).

with the advice and consent of the Senate. The Appointments Clause requires that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . [principal] Officers of the United States." Art. II, § 2, cl. 2. Thus, "[the President] may be assisted in carrying out [executive] responsibility by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work . . . must be directed and supervised by an officer who has been." *Arthrex*, 141 S. Ct. at 1976.

The Appointments Clause "is among the significant structural safeguards of the constitutional scheme. By vesting the President with the exclusive power to select the principal (noninferior) officers of the United States, [it] prevents congressional encroachment upon the Executive and Judicial Branches." *Edmond v. United States*, 520 U.S. 651, 659 (1997). And, in light of the "thousands of officers [who] wield executive power on behalf of the President," "[a]ssigning the nomination power to the President guarantees accountability for the appointees' actions"—there is "a clear and effective chain of command down from the President, on whom all the people vote." *Arthrex*, 141 S. Ct. at 1979 (citation and internal quotation marks omitted). In this way, the Clause "preserve[s] political accountability," *Edmond*, 520 U.S. at 663, by making clear who to "blame," *Arthrex*, 141 S. Ct. at 1979.

The Supreme Court in *Arthrex* held that section 6(c) of the statute effectively granted APJs sole authority to render final decisions in violation of the Appointments Clause. While the Director of the USPTO is vested with the "powers and duties" of the agency and is a Presidentially appointed, Senate-confirmed officer, § 3(a)(1), APJs are members of the PTAB appointed by the Secretary of Commerce, § 6(a); yet APJs exercise significant executive power by "issu[ing] . . . final written decision[s] with respect to the patentability of any patent claim challenged" in an IPR or PGR proceeding, §§ 318(a), 328(a). *See Arthrex*, 141 S.

Ct. at 1980–81.  And although "[t]he Director fixes the rate of pay for APJs, controls the decision whether to institute [] review, and selects the APJs" to sit on a particular panel, among other supervisory acts, *id.* at 1980, he had "no means of countermanding the final decision" of the PTAB by operation of § 6(c), *id.* at 1982.  Hence, the Director was "the boss, except when it comes to the one thing that makes the APJs officers exercising 'significant authority' in the first place—their power to issue decisions on patentability."  *Id.* at 1980 (citation omitted).  By "assign[ing] APJs 'significant authority' in adjudicating the public rights of private parties, while also insulating their decisions from review and their offices from removal," the statute ran afoul of the Appointments Clause.  *Id.* at 1986 (citation omitted).

The Supreme Court held § 6(c) unenforceable "to the extent that its requirements prevent the Director from reviewing final decisions rendered by APJs."  *Id.* at 1987.  Having "forb[ade] the enforcement of statutory restrictions on the Director that insulate the decisions of APJs from [her] direction and supervision," *id.* at 1988, the Court remanded the case to the Director "to decide whether to rehear the petition" in the first instance, making "clear [that] the Director need not review every decision of the PTAB.  What matters is that the Director have the discretion to review decisions rendered by APJs."  *Id.* at 1987–88.  In parallel with the remand, the USPTO established interim procedures for parties to request Director review of final written decisions from IPR and PGR proceedings.

## II

The present case involves a challenge to the procedures relating to institution decisions rather than the provisions governing final written decisions (at issue in *Arthrex*).

"The Director shall determine whether to institute" an IPR or PGR proceeding based on a third party's petition.  §§ 314, 324.  The petitioner must show a likelihood of

success for its patentability challenge. The institution decision is committed "to the Director's unreviewable discretion," *Arthrex*, 141 S. Ct. at 1977, and is "final and nonappealable," §§ 314(d), 324(e). "By regulation, the Director has delegated this authority to the PTAB itself." *Arthrex*, 141 S. Ct. at 1977; *see* 37 C.F.R. § 42.4(a) ("The Board institutes the trial on behalf of the Director."). We held in *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1033 (Fed. Cir. 2016), that "both as a matter of inherent authority and general rulemaking authority, the Director ha[s] authority to delegate the institution decision to the Board." However, the regulations do not provide for rehearing by the Director, though they do not preclude it. They merely state that "[a] party may request rehearing on a decision by the Board on whether to institute [a proceeding]." 37 C.F.R. § 42.71(c).

## III

Centripetal filed a complaint against PAN in district court asserting infringement of, *inter alia*, U.S. Patent Nos. 10,659,573 and 10,931,797. PAN then filed an IPR petition for the '573 patent and a PGR petition for the '797 patent. After PAN filed its petitions, and while they were pending, the USPTO updated its interim guidance regarding Director review, noting that the agency "does not accept requests for Director review of decisions on institution." SAppx 59; USPTO Resp. Br. at 6.

The PTAB denied institution. PAN then filed Requests for Director Rehearing seeking Director review of the non-institution decisions. The agency acknowledged receipt of the requests but noted that "'[a]t this time, the [USPTO] does not accept requests for Director review of decisions on institution . . .; parties may only request Director review of final written decisions issued in inter partes reviews and post-grant reviews.' *Arthrex Q&As*, A9. The requests, therefore, will not be considered." Appx 34 (alterations in original); *see also Palo Alto Networks, Inc. v. Centripetal*

*Networks, Inc.*, IPR2021-01151, Paper 11 (P.T.A.B. Mar. 17, 2022); *Palo Alto Networks, Inc. v. Centripetal Networks, Inc.*, PGR2021-00108, Paper 10 (P.T.A.B. Mar. 17, 2022). In response to PAN's request for clarification, the USPTO further noted that PAN's "rehearing requests will not revert to the Board panel and there will be no further review of the Board's decision by the Office." Appx 35.

PAN filed this petition for a writ of mandamus challenging the agency's refusal to accept (and deliver to the Director) its Requests for Director Rehearing. Thereafter, the recently appointed Director updated the interim guidance to state that "the Office does not accept requests for Director review of institution decisions" but that "the Director has always retained and continues to retain the authority to review such decisions sua sponte after issuance (at the Director's discretion)." SAppx 67. The Director has since exercised that authority. *See, e.g.*, *OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01064, Paper No. 41 (P.T.A.B. June 7, 2022); *Pat. Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2021-01229, Paper No. 31 (P.T.A.B. June 7, 2022).

## DISCUSSION

"[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). To obtain a writ of mandamus, the petitioner bears the "demanding, [but] not insuperable," burden of showing: (1) there are "no other adequate means to attain the relief" requested, (2) the "right to issuance of the writ is clear and indisputable," and (3) "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted).

The statute governing institution decisions bars appeal. §§ 314(d), 324(e). Given that there is no adequate remedy by way of direct appeal of decisions denying

institution, "we [have] conclude[d] that judicial review is available in extraordinary circumstances by petition for mandamus" in this court under 28 U.S.C. §§ 1295(a)(4), 1651. *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1379–81 (Fed. Cir. 2021).

I

As a preliminary matter, Centripetal (but not the USPTO) argues that PAN forfeited its Appointments Clause challenge by seeking to initiate IPR and PGR proceedings, relying on our decision in *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157 (Fed. Cir. 2020). In *Ciena*, we held that a petitioner forfeited its Appointments Clause challenge to a final written decision where it "was content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it" and only afterwards asserted that the members of the panel "were not appointed in compliance with the Appointments Clause." *Id.* at 1159.

We need not decide whether PAN similarly forfeited its Appointments Clause challenge by seeking institution decisions under regulations that make no provision for Director review (arguably a different situation from that presented in *Ciena*) because "courts of appeals may forgive waiver or forfeiture of claims that implicate structural constitutional concerns." *Id.* at 1160; *see id.* at 1161 ("While the presence of a structural separation of powers issue can justify considering a matter in the face of a clear waiver or forfeiture, it does not compel it."); *see also Freytag v. Comm'r*, 501 U.S. 868, 878–79 (1991) (recognizing "discretion to consider nonjurisdictional claims that had not been raised below," including "Appointments Clause objections").

We conclude that it is appropriate to address PAN's structural constitutional challenge in this case despite possible forfeiture.

## II

Relying on *Arthrex*, PAN argues that the categorical refusal to accept requests for Director review of institution decisions violates the Appointments Clause. Pet. at 2. Even assuming non-institution decisions constitute "final decision[s] on how to exercise executive power," *Arthrex*, 141 S. Ct. at 1984; *see Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1333 (Fed. Cir. 2022) ("*Arthrex II*") ("[A]n inferior officer generally cannot issue a final agency decision[.]"), this case fundamentally differs from *Arthrex*. Here, there is no structural impediment to the Director's authority to review institution decisions either by statute or by regulation. Indeed, institution decisions are, by statute, the Director's to make and are only made by the Board as a matter of delegated authority.

The statutes provide that "[t]he Director shall determine whether to institute" proceedings. §§ 314, 324. Although the Director delegated that authority to the Board, 37 C.F.R. § 42.4(a) ("The Board institutes the trial on behalf of the Director."), the Director plainly has the authority to revoke the delegation or to exercise her review authority in individual cases despite the delegation.[3] It makes no difference that the Director delegated institution

---

[3]    As a matter of practice, the Director expressly retained review authority (in guidance issued after PAN's petition for mandamus), SAppx 67, and has since exercised that authority, *see OpenSky*, IPR2021-01064, Paper No. 41; *Pat. Quality Assurance*, IPR2021-01229, Paper No. 31. And, as a matter of law, "the usual rule [is] that an agency head's delegation of her authority to subordinates is premised, at least in part, on the delegating official maintaining the power to review the decisions of the delegee," *Villarreal-Dancy v. U.S. Dep't of the Air Force*, No. 19-2985, 2021 WL 3144942, at *9 (D.D.C. July 26, 2021). *See Arthrex*, 141 S. Ct. at 1983–84.

authority to the PTAB without express "retention of any avenue for Director intervention." Reply Br. at 8 (emphasis omitted). "That the Appointments Clause requires that a [Presidentially appointed, Senate-confirmed officer] have review authority does not mean that a principal officer, once bestowed with such authority, cannot delegate it to other agency officers," *Arthrex II*, 35 F.4th at 1339, such as the PTAB in this case.

The unambiguous identification of the Director as the politically accountable executive officer responsible for institution decisions maintains the clear "lines of accountability demanded by the Appointments Clause," from the President to the Director, and allows the President to "attribute [any] failings to those whom he can oversee." *Arthrex*, 141 S. Ct. at 1981–82 (citation and emphasis omitted). We see no Appointments Clause "infirmity in the institution decision as the statute clearly bestows [] authority on the Director." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1340 (Fed. Cir. 2019), *vacated*, 141 S. Ct. 1970.

We read the Supreme Court's decision in *Arthrex* as confirming that the statutory and regulatory provisions concerning institution do not violate the Appointments Clause. After reviewing the administrative scheme, and specifically noting that "the Director has delegated [institution] authority to the PTAB itself," *Arthrex*, 141 S. Ct. at 1977, the Court concluded that the Director "controls the decision whether to institute," *id.* at 1980. The Court then found that the power of APJs "to issue [final] decisions on patentability" without the ability of the Director to review such determinations offended the Appointments Clause. *Id.* (emphasis added).

> In every respect save the insulation of their decisions from review within the Executive Branch, APJs appear to be inferior officers—an understanding consistent with their appointment in a

> manner permissible for inferior but not principal officers. . . . If the Director were to have the authority to take control of a PTAB proceeding, APJs would properly function as inferior officers.

*Id.* at 1986–87 (citation and internal quotation marks omitted). Thus, although not directly addressing the issue before us, this language strongly suggests that delegation to the Board of the authority to decide on institution without a mechanism for parties to subsequently request Director review does not present Appointments Clause problems.

We find additional support from the Supreme Court's discussion of our earlier decision in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994). *See Arthrex*, 141 S. Ct. at 1985. As noted in *Arthrex*, the plurality opinion in *Alappat* described how a patent applicant at the time of *Alappat* could appeal an adverse determination by a patent examiner to the Board of Patent Appeals and Interferences and seek rehearing by the Board, but could not appeal to the Commissioner of Patents and Trademarks. *Arthrex*, 141 S. Ct. at 1985 (quoting *Alappat*, 33 F.3d at 1535). However, the Commissioner of Patents and Trademarks "retained 'the ultimate authority regarding the granting of patents' . . . notwithstanding the lack of a formal appeal from the Board's decision." *Id.*

So too the decisions in various circuits, including our own, have uniformly rejected similar Appointments Clause challenges before and after *Arthrex*. For example, in *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019), a pre-*Arthrex* decision, the D.C. Circuit affirmed an order holding a party in civil contempt for failure to comply with a grand jury subpoena issued by special counsel appointed by the Attorney General. The affected party argued the special counsel's appointment violated the Appointments Clause, but the court concluded that even though there were regulations that purportedly limited the Attorney General's supervisory authority, that did not create a

constitutional infirmity in part because the "limitations on the Attorney General's oversight and removal powers are in regulations that the Attorney General can revise or repeal, *see* 5 U.S.C. § 553(a)(2), (b)(A), (b)(B), (d)(3)." *Id.* at 1052. This meant special counsel "effectively serves at the pleasure of an Executive Branch officer who was appointed" in compliance with the Appointments Clause. *Id.*

In another pre-*Arthrex* decision, *Willy v. Administrative Review Board*, 423 F.3d 483, 491 (5th Cir. 2005) (citation omitted), the Fifth Circuit rejected a challenge to the Secretary of Labor's creation of an Administrative Review Board comprised of inferior officers that "issue[d] final agency decisions." The court noted that "[t]he relevant statutes expressly grant rulemaking, enforcement, and adjudicative authority *to the Secretary*" and concluded that the Secretary's "delegation of decision-making authority to [the Administrative Review Board did] not violate the Appointments Clause." *Id.* at 494 (emphasis added). So too, in *Varnadore v. Secretary of Labor*, 141 F.3d 625, 631–32 (6th Cir. 1998), the Sixth Circuit concluded that the Secretary of Labor's "establishment of the [Administrative Review Board] and delegation to it of final decision-making responsibility is authorized under the Appointments Clause."

The same is true after *Arthrex*. Recently, in *United States v. Donziger*, No. 21-2486, 2022 WL 2232222 (2d Cir. June 22, 2022), the Second Circuit identified structural authority, rather than supervisory activity, as a key consideration under *Arthrex*. In *Donziger*, a district court had appointed special prosecutors for a criminal contempt trial, and the defendant argued that the prosecution violated the Appointments Clause because the special prosecutors were inferior officers who lacked supervision by a principal officer. *Id.* at *2. The Second Circuit agreed that the special prosecutors were inferior officers but found no Appointments Clause violation because "it is clear that [they] are subject to the supervision of the Attorney General" under

his "broad statutory authority to supervise all litigation involving the United States." *Id.* at *7. "Whether they were in fact supervised is beside the point" because "'[w]hat matters is that the [principal officer] have the discretion to review decisions rendered by [the inferior officer].'" *Id.* (quoting *Arthrex*, 141 S. Ct. at 1988). "The Constitution does not mandate a minimum level of supervisory activity over the work of inferior officers; rather, it requires as a matter of structural authority that inferior officers be subject to the supervision and direction of principal officers." *Id.* Institution decisions made by APJs are similarly subject to supervision and direction by the Director, which satisfies the Appointments Clause even if that authority is not, in fact, exercised.

Finally, in *Piano Factory Group, Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363 (Fed. Cir. 2021), also decided after *Arthrex*, we rejected an Appointments Clause challenge to the Trademark Trial and Appeal Board ("TTAB").[4] The TTAB issued a final decision cancelling the registration of a federal trademark, and the appellant challenged the decision as a violation of the Appointments Clause based on the alleged lack of Director review. Significantly, just as in the context of the PTAB's institution decisions and final written decisions post-*Arthrex*, "there are no . . . statutory restraints on the Director's authority [to rehear TTAB panel decisions]," *id.* at 1372, leaving the Director free to review such decisions in compliance with the Appointments Clause. *See Arthrex*, 141 S. Ct. at 1986–88.

---

[4] Under the current statute, which was enacted after the TTAB's decision, the Director has the express "authority to reconsider, and modify or set aside, a decision of the [TTAB]." 15 U.S.C. § 1068 (Trademark Modernization Act of 2020, Pub. L. No. 116-260, div. Q, tit. II, subtit. B, § 228, 134 Stat. 1182, 2209–10).

We rejected the contention that, irrespective of the Director's authority, failure to "guarantee litigants the opportunity to obtain Director review of adverse [] decisions" constitutes a violation of the Appointments Clause. *Piano Factory*, 11 F.4th at 1374. We reiterated that "the Appointments Clause was intended to prevent unappointed officials from wielding too much authority, not to guarantee procedural rights to litigants, such as the right to seek rehearing from the Director . . . . [W]hether the Director elects to exercise [her review] authority does not affect the status of ATJs [or APJs] as inferior officers under the Appointments Clause." *Id.* Under *Arthrex*, "[w]hat matters is that the Director have the discretion to review [final] decisions," 141 S. Ct. at 1988, which the Director has in this case.

We conclude that the delegation of authority as to whether to institute IPR and PGR proceedings to the Board and the Director's policy refusing to accept party requests for Director rehearing of decisions not to institute do not violate the Appointments Clause.

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

August 16, 2022                    /s/ Peter R. Marksteiner
        Date                        Peter R. Marksteiner
                                    Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

_____

**IN RE: PALO ALTO NETWORKS, INC.,**
*Petitioner*

_____

2022-145

_____

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2021-01151 and PGR2021-00108.

_____

REYNA, *Circuit Judge*, concurring.

I concur with my colleagues that PAN's petition for writ of mandamus should be denied. But I disagree as to why.

The Supreme Court has long recognized that mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations and citations omitted). In fact, mandamus relief is to be granted only where the petitioner has demonstrated (1) it has no other adequate means to attain the desired relief; (2) it has a clear and indisputable right to issuance of the writ; and (3) the writ is appropriate under the circumstances. *Id.* This court also recognizes that mandamus is an extraordinary remedy to be granted only in rare circumstances. *See, e.g., Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1379 (Fed. Cir. 2021); *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1357 (Fed. Cir. 2017); JAMES

WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.61 (3rd ed. 2013).

The analysis, therefore, of whether a petition meets the high standard for mandamus begins and ends with a principled focus on the specific relief sought by the petitioner. In my view, the majority loses sight of the precise remedy PAN seeks. "PAN seeks a writ of mandamus from this Court pursuant to the provisions of 28 U.S.C. § 1651 and Rule 21(a) of the Federal Rules of Appellate Procedure compelling the agency to accept (and deliver to the Director for consideration) its Requests for Director Rehearing in Nos. IPR2021-01151 and PGR2021-00108." Pet. at 2. PAN "respectfully requests that the Court issue a writ of mandamus to the Director of the Patent and Trademark Office to accept PAN's Requests for Director Rehearing for consideration on the merits by the Director." *Id.* at 19.

According to PAN, mandamus is required because the Director's "categorical refusal to accept Requests for Director Rehearing related to institution decisions insulates an entire category of final agency decisions from Director review and thus runs afoul of [the Appointments Clause]." Pet. at 1. In other words, the agency has nailed shut its window for filing Requests for Director Rehearing.

I generally agree that a categorical denial by the Director to accept any requests for review raises potential constitutional concerns. But I need not reach that question and its related analysis because two circumstances undercut PAN's claim that the Director categorically refuses to accept Requests for Director Rehearing.

First, in denying PAN's requests for review, the Director noted that she was not accepting requests for review "[a]t this time." App'x 34. This suggests that there is no "categorical refusal" to accept requests for review, but rather, that the Director has exercised her discretion not to invoke her review authority. The window is not nailed shut; it is closed for the moment.

Second, the Director precisely exercised her review authority in two other actions where she granted *sua sponte* review of determinations denying institution.[1]  *See, e.g., OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01064, Paper No. 41 (P.T.A.B. June 7, 2022); *Pat. Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2021-01229, Paper No. 31 (P.T.A.B. June 7, 2022).  This outcome is consistent with the Patent Office guidance published April 22, 2022.  The guidance provides that "the Director has always retained and continues to retain the authority to review [institution] decisions sua sponte."  Patent Office SApp'x 67.  In my view, the Director's exercise of discretion to grant review in those two actions pulls the rug out from under PAN's petition.  The agency window is open after all.

I would deny the petition for writ of mandamus on grounds that it fails to meet the high standard set for mandamus relief.  First, this is not an extraordinary case requiring extraordinary relief.  PAN's desired relief already exists.  The facts here are clear.  The agency has a process for the Director to exercise her discretion to accept (and thereby consider) requests for review.  This process aligns with the Supreme Court's decision in *United States v. Arthrex*, 141 S. Ct. 1970, 1988 (2021) ("To be clear, the Director need not review every decision of the PTAB.  What matters is that the Director have the discretion to review decisions rendered by APJs.").

Second, PAN also fails to demonstrate a clear and indisputable right to a writ that would compel the Director to do what she has already done.  We should not compel an

---

[1]    The Director granted *sua sponte* review in these actions after PAN filed its petition and Centripetal and the Patent Office filed their response briefs, but before PAN filed its reply brief.  In its reply, PAN noted that the Director had not granted *sua sponte* review until after PAN had filed its petition.  Reply at 9.

agency to take specific action that the agency demonstrates it has already taken. And third, because the remedy PAN seeks already exists, the issuance of a writ would not be appropriate under the circumstances. Mandamus should be reserved for extraordinary cases requiring extraordinary relief and not serve to provide declaratory relief in a run-of-the-mill action.